State of Connecticut *v.* Angel Lopez
State of Connecticut *v.* Ruben Sariol
(2187)
(2188)

Dupont, C. J., Hull and Borden, Js.

Argued October 2—decision released December 17, 1985

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellants (defendants).

*James M. Bernardi,* assistant state's attorney, for the appellee (state).

HULL, J. In this case, two defendants who were tried together appeal from their convictions arising out of the same factual background. Their cases were also combined on appeal. Each defendant was convicted, after a jury trial, of possession of burglar's tools in violation of General Statutes § 53a-106, of burglary in the third degree in violation of General Statutes § 53a-103, of larceny in the sixth degree in violation of General Statutes § 53a-125b, and of conspiracy to commit burglary in violation of General Statutes § 53a-48.

Both defendants claim as error that the trial court improperly instructed the jury on intent, an essential element of each of the crimes charged. The defendant Lopez also claims as error (1) that the trial court denied his sixth amendment right to confrontation by restricting his cross-examination of one of the investigating officers, and (2) that the state failed to prove beyond a reasonable doubt two essential elements of the offense of possession of burglar's tools. The defendant Sariol also asserts as error (1) that he was convicted of possession of burglar's tools without sufficient evidence as to whether he had the intent to use, or knowledge that some person intended to use, a screwdriver in the commission of the burglary, and (2) that he was denied due process at sentencing because, in imposing sentence, the trial court erroneously assumed that the defendant was unwilling to admit his guilt in exchange for a proper degree of leniency in sentencing.

The undisputed facts and pertinent testimony before the jury follow. On March 2, 1983, at some time between 10:30 a.m. and 10:50 a.m., Officers Robert

Studwell and Frank Tyska, and Sergeant John Suchy of the Norwalk police department responded to a call of a burglary in progress at Six Taylor Avenue. An anonymous female caller had reported two men entering through a rear window. Tyska and Suchy went to the rear of the building with a police dog while Studwell covered the front door. When Tyska noticed a cut rear window screen and an open window, he yelled into the house that the dog would be turned loose unless everyone came out. Tyska then heard footsteps traveling away from him while Studwell heard footsteps traveling toward him. The defendants ran out the front door where Studwell placed them in custody at gunpoint. A search of Sariol at the scene by Studwell produced a watch crystal and a screwdriver. A search at headquarters produced a watch from Sariol and earrings from Lopez. Studwell testified that the search of Lopez had been conducted by Tyska and Tyska testified that it had been conducted by Studwell.

The earrings and watch were identified as belonging to Jacob Kozar and Debra Wagner who resided at Six Taylor Avenue on the date of the burglary. The items had been removed from one of the bedrooms. Kozar and Wagner did not give the defendants permission to enter their house and neither had ever met either of the defendants. The screwdriver found on Sariol was admitted into evidence. It did not belong to Jacob Kozar or Debra Wagner. Suchy testified that after the apprehension of the defendants he observed the point of entry and the cut screen. He testified that his investigation of prior burglaries indicated the use of screwdrivers in some of them. He also testified that the screwdriver was used to cut the screen and that in his opinion it was a burglar tool.

The defendant Lopez testified as follows. Sometime before March 2, 1983, he had gone to Six Taylor Avenue to collect $50 which Kozar owed him for a televi-

sion set Lopez had sold him several months earlier. No one was at home on this first visit. On March 2, 1983, he returned with Sariol. He asked Sariol to go to the rear of the building to notify him if Kozar attempted to leave through the back door. He entered the open front porch door and knocked on the inner front door and waited for five minutes with no response. Sariol then returned to the front door. The police arrived and arrested both of them, searching both men but finding nothing. Lopez was not aware that Sariol had a screwdriver. He had never seen either the watch or the earrings before. He did not enter the inner front door and did not enter the house through any window.

Sariol's testimony was consistent with that of Lopez. Both he and Lopez were on the front porch when the police arrived. Sariol never entered the house. Lopez never had the screwdriver, the earrings or the watch in his possession. No earrings were taken from Lopez.

I

## As to Both Defendants: Whether the Court Improperly Instructed the Jury on Intent

Both defendants claim error in the court's instructions to the jury on the intent element of the crimes charged against them. Since neither defendant requested an instruction on intent, or excepted to the charge, we can consider this claimed error only under the second prong of the *Evans* bypass rule; *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); that is, to determine if the defendants have clearly been deprived of a fundamental constitutional right and a fair trial. We will not unnecessarily fatten this opinion with the well-known criteria governing the application of this test. The principles are well summed up in *Evans,* supra, and most recently refined in *State* v. *Torrence,* 196 Conn. 430, 435, 493 A.2d 865 (1985): "Once it has been established that the record *adequately*

*supports a claim* that a defendant has clearly been deprived of a fundamental constitutional right and a fair trial; *State* v. *Evans,* supra, 70; the merits of the claim must be determined." (Emphasis added.) Review of those merits involves the inquiry, not whether the ruling or instruction at issue is erroneous, but whether it violated some fundamental constitutional right of the defendant. *State* v. *Torrence,* supra.

Thus, our *Evans* inquiry in this case has three prongs: (1) whether the record supports the defendant's claim that the charge raises a question of fundamental constitutional dimension; (2) if so, whether there was error; and (3) if there was error, whether it requires reversal. Id. In cases involving claimed error in the judge's charge to the jury, the ultimate issue is whether it was reasonably possible that the jury was misled. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982).

The defendants' claim is that the court misled the jury by equating knowledge with specific intent. Such a claim raises a sufficient constitutional issue to afford an *Evans* review; *State* v. *Kurvin,* supra, 558; and our review of the record indicates adequate support for the claim. Accordingly, we now consider the merits of the claim.

During its charge to the jury, the court did not read the statutory definition of intent. The defendants complain that, in its general discussion of intent, the court used the phrase "purpose, intention or knowledge" five times, and also used the phrase "certain purpose or intention or certain knowledge." During its discussion of the essential elements of the crime of conspiracy, the court four times used the phrase, "purpose, intention or knowledge," once used the phrase, "certain purpose or intention or certain knowledge," and once used the phrase, "purpose and intention or knowledge." During the charge on the elements of larceny, the court once used the phrase, "unlawful purpose or intention."

Each of the crimes of which the defendants were convicted contained the essential element of a specific intent.[1] The words "intent" and "knowledge," obviously describe different mental states. See General Statutes §§ 53a-3 (11) and (12). Thus, the defendants claim, it is reasonably possible that the jury was misled into believing that a specific "intent" or "purpose" was not necessarily required for a conviction of any of the offenses charged as long as the defendants possessed "knowledge."

A careful analysis of the relevant section of the charge reveals that the defendants overstate the case. Their claim of error represents the kind of microscopic examination of the charge discountenanced by our Supreme Court in *State* v. *Mastropetre,* 175 Conn. 512, 524, 400 A.2d 276 (1978).

---

[1] The pertinent parts of the relevant statutes provide: "[General Statutes] Sec. 53a-106. MANUFACTURING OR POSSESSION OF BURGLAR'S TOOLS . . . . (a) A person is guilty of manufacturing or possession of burglar's tools when he manufactures or has in his possession any tool, instrument or other thing adapted, designed or commonly used for advancing or facilitating offenses involving unlawful entry into premises, or offenses involving forcible breaking of safes or other containers or depositories of property, under circumstances manifesting an intent to use or knowledge that some person intends to use the same in the commission of an offense of such character."

"[General Statutes] Sec. 53a-48. CONSPIRACY. . . . (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

"[General Statutes] Sec. 53a-103. BURGLARY IN THE THIRD DEGREE . . . . (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

"[General Statutes] Sec. 53a-119. LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

"[General Statutes] Sec. 53a-125b. LARCENY IN THE SIXTH DEGREE . . . . (a) A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119 and the value of the property or service is two hundred fifty dollars or less."

Before submitting the state's evidence to the jury, the court distinguished between "intent" and "knowledge," when it defined the mens rea element of the crime of possession of burglar's tools which is premised upon two alternative mental states: intent of the accused, or knowledge of the intent of another. The court, in its charge, repeatedly and accurately stated the intent required for each separate crime involved.

The plain and ordinary meaning of the word "intentionally" is so obvious that it is not error for the trial court to refuse to instruct the jury on its statutory definition. *State* v. *Maresca,* 173 Conn. 450, 460–61, 377 A.2d 1330 (1977). Where a trial court, in describing an essential element of an offense, uses language synonymous with the statutory definition of that element, the failure to read the statutory definition will not render the charge constitutionally defective. *State* v. *Mason,* 186 Conn. 574, 587, 442 A.2d 1335 (1982). The test is what "a reasonable juror hearing this instruction within the context of the entire charge would naturally assume . . . ." *State* v. *Boulware,* 183 Conn. 444, 447–48, 441 A.2d 1 (1981).

The commingling of the words "purpose" and "intent" has been found not misleading in *State* v. *Mason,* supra. In *Mason,* the court's instructions were more closely in line with the statutory definition of intent than in this case. Nevertheless, in view of the charge as a whole and the court's frequent reiteration of the specific intent required for the various crimes, we conclude that, as in *Mason,* the use of these terms simultaneously and synonymously could not possibly have misled the jury.

Thus, the defendants' argument boils down to a claim that the addition of the word "knowledge," as described above, constituted error. It is clear that the twelve references to intent, purpose or knowledge, or close

approximations of this phrase, occurred entirely in the context of a general discussion about circumstantial evidence relating to intent. It was only thereafter that the court gave its specific description of each offense with its necessary mental state. The court clearly added the word knowledge in this area of the charge because it is an element of the crime of possession of burglar's tools.

The defendants assert that there was a spillover from the words used in the general discussion of circumstantial evidence relating to intent, which affected the charge on the necessary intent for the crimes involved. In the context of the factual issues raised at the trial, we conclude that this claim is based on mere speculation. There is no reasonable possibility that the jury was misled by the charge on intent.

II

## As to Both Defendants: The Sufficiency of the Evidence of Possession of Burglar's Tools

The defendants claim that there was insufficient evidence to prove them guilty beyond a reasonable doubt of possession of burglar's tools. It was incumbent upon the state to prove the following essential elements contained in General Statutes § 53a-106 (a): (1) that the screwdriver found in Sariol's physical possession was included in the category of "any tool, instrument or other thing adapted, designed or commonly used for advancing or facilitating offenses involving unlawful entry into premises"; (2) that the particular defendant actually had possession of the screwdriver; and (3) that any possession of the screwdriver by the defendant occurred "under circumstances manifesting an intent to use or knowledge that some person intend[ed] to use the same in the commission of an offense [involving unlawful entry into premises]."

The issue, in reviewing the sufficiency of the evidence, is whether the jury could reasonably have concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). The evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Stankowski,* supra. In a jury trial, the credibility of witnesses and the weight to be given testimony is for the jury to determine. *State* v. *Gaynor,* 182 Conn. 501, 505, 438 A.2d 749 (1980).

Both defendants concede that there was sufficient evidence to prove that the screwdriver fell within the statutory description of items qualifying as burglar's tools. Lopez claims, however, that the evidence was insufficient to satisfy the second element, possession of this screwdriver, as to him. Possession can be either actual or constructive. *State* v. *Ferrone,* 97 Conn. 258, 116 A. 336 (1922); *State* v. *Gonski,* 155 Conn. 463, 232 A.2d 483 (1967); annot., 33 A.L.R.3d 788, § 7 (b) and (c). "The state was not required to prove that the defendant himself had actual physical possession of any or all of the articles. If it was established that any of the [defendants] had dominion and control over the articles and if [the defendants] were acting, at the time, pursuant to a common purpose, then all would have possession of the articles. *State* v. *Ferrone,* 97 Conn. 258, 262, 116 A. 336." *State* v. *Gonski,* supra, 467. The evidence in this case was more than sufficient to sustain an inference that Lopez had constructive possession of the screwdriver.

Sariol does not contest the sufficiency of the evidence as to the second element of the crime. Both defend-

ants, however, challenge the sufficiency of the evidence as to the third element, the intent factor.

There was evidence from Suchy, Tyska and Kozar that the screen had been cut, although there was no direct evidence that the screwdriver had been used for this purpose. It defies common sense to claim that the jury could not reasonably infer, under the circumstances of this case, that the defendants had the necessary intent that the screwdriver be used in the commission of the crimes.

The case of *Commonwealth* v. *Jones*, 355 Mass. 170, 243 N.E.2d 172 (1969), is very similar to this case. There, police officers responding to a call saw two defendants coming from the front door of a house. The police overtook one of the defendants and a search of him revealed a pair of gloves in a side pocket. A search of the codefendant revealed a pair of gloves, a screwdriver and a kitchen knife. When the owner returned to the house shortly thereafter, he found all of the lights on in the front hall and in the kitchen, and found a door into the kitchen opened and unlocked. A pane of glass in the kitchen door was broken. There were no jimmy marks found at the house to indicate that the knife or the screwdriver had been used. Everything in the house was just as the owner had left it. Nothing was missing.

Both defendants contended that the evidence did not warrant their conviction for possession of burglar's tools with intent to use them. The Supreme Judicial Court of Massachusetts, noting that the tools were found together in the constructive possession of the defendants at the scene of a burglary, concluded that the intent to use the tools to break and enter could reasonably be inferred. "That there was no evidence that the tools were in fact so used does not bar the inference." *Commonwealth* v. *Jones*, supra, 177.

We find no error as to the defendants' conviction of possession of burglar's tools.

## III

## AS TO THE DEFENDANT LOPEZ: WHETHER HE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION BY THE COURT'S RESTRICTION OF HIS CROSS-EXAMINATION OF OFFICER STUDWELL

Lopez claims that the court unduly restricted cross-examination when it sustained objections by the state on the basis of repetitiveness. This type of claim usually involves a two-pronged analysis: whether the constitutional standard has been met, and, if so, whether the court abused its discretion. *State* v. *Cunningham,* 3 Conn. App. 353, 356, 488 A.2d 834 (1985). The court's discretion in curtailing cross-examination " 'comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment.' " *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Lopez seeks review under *Evans* since he did not except to the court's rulings. We conclude, however, that the record does not adequately support a claim of a violation of Lopez's right of confrontation and, therefore, decline to consider the merits of his claim.

The objections involved here were repeatedly sustained when Studwell was questioned concerning the search of Lopez at the police station. On direct examination, Studwell testified that the earrings were taken from Lopez's pocket during a search at the police station. On cross-examination, he again stated that the earrings were found in Lopez's pocket. He added that Tyska did the search and that Tyska would have to answer as to the pocket in which he found the earrings. Defense counsel thereafter repeatedly asked Studwell,

in different ways, the same question: In which pocket were the earrings found? Studwell had made it clear that he did not see which pocket produced the earrings. The trial court sustained the state's objections on the ground of repetitiveness.

We have carefully reviewed the transcript involved and conclude that Lopez is attempting to make an *Evans* mountain out of an evidential molehill. The court's discretionary rulings simply do not support Lopez's constitutional claim.

## IV

### As to Defendant Sariol: Claimed Error in Sentencing

At the sentencing hearing, the prosecutor told the court that Lopez and Sariol "chose to go before trial." Sariol's counsel told the court that before trial the state offered to recommend three years for Sariol in exchange for a guilty plea, but that this offer was contingent on Lopez also accepting a separate offer to him. Counsel claimed that Sariol had been willing to accept the state's offer but that Lopez would not.[2] Although the record does not indicate it, the state conceded at oral argument in this court that it made joint conditional offers to both. Defense counsel asked the court to take into consideration the fact that Sariol had wanted to accept the state's offer. The court declined to do so, stating "[c]ertainly a defendant, if he decides to enter a plea and avoid a trial, I think he is entitled to some consideration, and this is not that particular case here."

---

[2] The record is far from clear that Sariol ever agreed to accept the contingent plea bargain. The strongest evidence of such acceptance is a statement by counsel that "I clearly remember at one point in time where Mr. Sariol *had resigned himself* to accepting the plea bargain offer of three years." (Emphasis added.)

Sariol never pleaded guilty but, on the contrary, affirmatively claimed innocence at the trial. Upon his conviction, the court sentenced him to a total effective sentence of six years, one year less than Lopez. He claims that the court violated his due process rights by not limiting his sentence to the three years which he was willing to accept before trial. We disagree.

Extending a proper degree of leniency in return for guilty pleas is a permissible practice. *Corbitt* v. *New Jersey,* 439 U.S. 212, 224, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978). A guilty person who has not pleaded guilty is not deserving of such leniency because he has "not demonstrated those attributes on which leniency is based." Id. "The court exercises wide discretion in the sources and types of evidence which it may consider." *State* v. *Huey,* 1 Conn. App. 724, 734, 476 A.2d 613, cert. granted, 193 Conn. 805, 477 A.2d 659 (1984). An appellate court will not review the proper exercise of a trial court's discretion to fix a sentence which is within the statutory limits of the crime for which the defendant is being sentenced. *State* v. *Nardini,* 187 Conn. 109, 119, 445 A.2d 304 (1982).

We note that Sariol does not claim that he was somehow precluded from pleading guilty to the charges against him. Of course, he could have done that any time and gained whatever leniency was due him. His claim is solely that he is entitled, as a matter of due process, to the effective sentence which would have been recommended by the state had both he and Lopez accepted the state's joint offer. The fatal flaw in this claim is that it assumes that the court would have accepted the state's recommendation. There is nothing in this record to support that assumption.

Furthermore, the proper time for Sariol to have complained that he was deprived of his due process rights was when that alleged deprivation occurred, namely

when he was required to go to trial despite his claimed willingness to plead guilty in accordance with the contingent offer. Had Sariol done so, a proper record of precisely what the offer was, including the contingencies and including whether the court would be inclined to approve the recommendation, could have been made. Moreover, the court could then have assessed the impact of the state's asserted interest in dispensing of *both* cases without the need for a trial.

Instead, Sariol chose to take his chances on a trial and raise his claim at post-trial sentencing. Thus, he seeks both the benefit of a plea bargain and the chance of acquittal at trial. We do not believe that due process affords him the luxury of such a dual selection. Under the circumstances, he must be deemed to have waived any due process claim by going to trial without having complained earlier.

There is no error in either case.

In this opinion the other judges concurred.