STATE OF CONNECTICUT *v.* WILLIAM PANNONE
(3903)

HULL, SPALLONE and BIELUCH, Js.

Argued September 17—decision released November 4, 1986

*Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Thomas K. McDonough,* special assistant state's attorney, with whom were *Bradford J. Ward,* assistant state's attorney, and, on the brief, *John E. Connelly,* state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing from the judgment rendered after his conviction by a jury of the crime of intentionally making a false statement under oath, in violation of General Statutes § 51-297 (b). The defendant claims that the trial court erred (1) by denying the defendant's motion for judgment of acquittal, (2) by erroneously charging on reasonable doubt, (3) by refusing the defendant's request that the correction officers who had custody of the defendant during the trial be ordered to cover up their indicia of authority in the presence of the jury, (4) by erroneously charging on intent, and (5) by restricting the defendant's voir dire in reference to extraneous influences on the jury.

The jury could reasonably have found the following facts. The defendant, while being held under bond for other offenses, applied for the services of a public defender. While being interviewed by an investigator, the defendant failed to disclose that he was the owner of approximately $57,000 worth of stock. As a result, that fact was omitted from his application. The defendant signed a completed application for the public defender services and made oath as to its veracity. A public defender was appointed and represented the defendant in court on the same day at a hearing at which his bond was lowered. Subsequently, it was discovered that the defendant, despite his sworn statement, did in fact own stock worth about $57,000. Had the fact been known earlier, it would have made the defendant ineligible for representation by a public defender.

The defendant was arrested for giving a false statement and elected to be tried by a jury. During the voir dire process, a potential juror recalled that during the lunch break he had overheard a comment in the jury room to the effect that the defendant "was in jail now pending another trial or something." The court excused this juror and denied the defendant's request that the juror be called back and questioned as to whether any other jurors were present when he heard the remark. The court also denied the defendant's request that after the lunch hour he be allowed to question two of the previously selected jurors as to whether they had overheard anything about the defendant. The court reasoned that both counsel had had the opportunity to and did in fact briefly question the jurors as to whether the jurors knew anything about the defendant or the case.[1]

At the beginning of the trial, and several times during the same, the defendant requested that the court order the correction officers who stood by the doors of the court during the trial to remove themselves from the courtroom, or at least to cover any indicia of their identity while in the presence of the jury. The court denied the defendant's requests. The defendant was found guilty by the jury and this appeal followed.

The defendant first claims that his motion for judgment of acquittal should have been granted because the state failed to prove that he had violated General Statutes § 51-297 (b).[2] The defendant contends that because

---

[1] The court did allow counsel to reexamine two other jurors chosen after the lunch break who had not been asked during the initial voir dire whether they knew anything about the defendant or the case.

[2] General Statutes § 51-297 provides in part: "(a) A public defender, assistant public defender or deputy assistant public defender shall make such investigation of the financial status of each person he has been appointed to represent or who has requested representation based on indigency, as he deems necessary. He shall cause the person to complete a written statement under oath or affirmation setting forth his liabilities and assets, income

General Statutes § 51-297 (a) provides that the public defender "shall cause the person to complete a written statement" for a public defender, he cannot be convicted of falsifying a statement under § 51-297 (b) unless he fills out the application form in his own hand. The defendant argues that because an investigator from the public defender's office assisted him in completing the application, he did not "complete a written statement" and cannot be found guilty of falsifying a statement under § 51-297 (b).

We note initially that § 51-297 (a) is descriptive rather than penal and its provisions do not constitute separate elements of the crime of making a false statement set forth in § 51-297 (b). Even if we were to read the sections together, however, as the defendant urges, we would find no basis for concluding that the language "[h]e shall cause the person to complete a written statement" must be interpreted to mean that the person completing the application must do so without another's assistance. Under the defendant's interpretation, persons who applied for public defenders and who could not complete the form in their own hand because of language, literacy or writing difficulties could never be prosecuted for false statements. We do not believe the legislature could have intended such a result. We find that General Statutes § 51-297 (b) applies to applicants who obtain assistance in completing the public defender applicant information form. The trial court, therefore, properly denied the defendant's motion for judgment of acquittal.

and sources thereof, and such other information which the [public defender services] commission shall designate and require on forms furnished for such purpose.

"(b) Any person who intentionally falsifies a written statement in order to obtain appointment of a public defender, assistant public defender or deputy assistant public defender shall be guilty of a class A misdemeanor."

The defendant's second and fourth claims of error focus on the trial court's jury instructions on reasonable doubt and intent.[3] The defendant claims that the trial court erred in its instruction on reasonable doubt by allegedly overemphasizing the fact that the state's burden of proof was not absolute.[4] The defendant asserts that the instructions failed to impress upon the jury the need for them to reach a "subjective state of near certitude," a standard approved by our Supreme Court in *State* v. *DelVecchio*, 191 Conn. 412, 419, 464 A.2d 813 (1983), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979). In *State* v. *Ryerson*, 201 Conn. 333, 341–42, 514 A.2d 337 (1986), however, our Supreme Court confirmed that the "near certitude" language quoted in *State* v. *DelVecchio*, supra, was not intended to be a required part of future jury instructions. The court in the *Ryerson* case approved an instruction containing language similar to the language used by the trial court in this case. *State* v. *Ryerson*, supra, 342–43 n.2; see also *State* v. *Webb*, 8 Conn. App. 620, 629–30, 514 A.2d 345 (1986) (approving a charge containing language "it is not necessary for the state to prove the absolute guilt

---

[3] Although no exception was taken to the charge on reasonable doubt, the instruction is subject to review because the subject matter was included in the defendant's written request to charge. Practice Book §§ 854 and 3063; *State* v. *Cook*, 8 Conn. App. 153, 156, 510 A.2d 1383 (1986).

While the record does not reflect that the defendant filed a request to charge on intent, the defendant made a timely exception as to a portion of the charge, thereby preserving the issue for appeal. Practice Book §§ 854 and 3063. In addition, the charge on intent is reviewable under the doctrine set forth in *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), because a fundamental constitutional right is implicated. See *State* v. *Lopez*, 5 Conn. App. 599, 602–606, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 1467 (1986) (reviewing intent charge under *Evans*).

[4] In its charge on reasonable doubt, the court stated:

"The accused doesn't have to prove that he did not commit the offense with which he is charged, but the state must prove that he did it. And, to prove that, it must prove every essential element going to make up the

of the defendant with certainty"). On the basis of the foregoing, we conclude that the reasonable doubt charge, read as a whole as it must be, properly stated the law to the jury. *State* v. *Dahlgren,* 200 Conn. 586, 605, 512 A.2d 906 (1986).

The defendant also claims that the court's charge on intent[5] contained language that was erroneous and mis-

offense of the charge. The burden of proving the guilt is upon the state. It's not sufficient for the state to make out a case of probable guilt and call upon the accused to rebut it. The state must prove guilt beyond a reasonable doubt. And, such a doubt is one that is based upon reason and grows out of the evidence or the lack of evidence, a doubt that is reasonable in the light of evidence and is honestly entertained by a juror after a fair comparison, careful examination of the entire evidence in the case is a reasonable doubt, within the meaning of the law.

"In order to establish the guilt of the accused beyond a reasonable doubt, the proof ought to exclude every reasonable presumption or hypothesis of innocence in the mind of each juror, for proof beyond a reasonable doubt is such proof as excludes every reasonable hypothesis of nonguilt. It will be helpful if you place emphasis on the word reasonable when you examine the case presented by the state here on this issue of whether they proved it beyond a reasonable doubt.

"You know, when you were indoctrinated, the first day that you were here, you were told that in a civil case, the person who has the burden of proving a point need only prove it by ever so little evidence, beyond the 50 percent mark, if you want to call it that. On the other extreme—and, that is a much lower burden than does the state have in a criminal case. On the other extreme is absolute proof. Well, very few things in life are subject to absolute proof, even two and two making four. You get these scientists who quarrel with that. But, I guess water runs downhill and things of that sort, that is subject to absolute proof or as close as we can get to it. But very few things in life are subject to absolute proof. So, the law doesn't expect the state to prove a case absolutely, they must prove it by a standard which we call proof beyond a reasonable doubt, which is greater than that in a civil case, but yet, need not be absolute. . . . "

[5] In its charge on intent, the court stated:

"Here, in this case, I think it's been pretty well narrowed down in the argument that *the real nub of the thing is the word intentional. And, I would say to you that a factor to be considered is the amount that is involved here. You could after all, forget that you have twenty-five or fifty dollars. Everyday or periodically the state prints a list of bank accounts that are going to be forfeited to the treasurer of the state because there has been no activity for—I think it's ten years now. And, so people do put money in banks, et*

leading. The defendant focuses, in particular, on a segment of the charge where the court stated that the jury should consider the amount of money involved in determining whether the defendant intentionally omitted the information from the application. The court then gave an example, stating "it's easier to forget twenty-five dollars than it is a hundred thousand dollars." The defendant also protests an additional definition of intent

cetera and forget it. But, you can, of course, it's easier to forget twenty-five dollars than it is a hundred thousand dollars or something of that nature. So, that is just one factor to be considered. . . .

"Now, on the question of intent, of course, the defendant has testified in this case and that is direct evidence of his intent. *He said that he was shook up and I think that is the expression he used and he was upset, et cetera. Also, in considering what his intent might be, you can rely on circumstantial evidence.* And, circumstantial evidence of an event is the testimony of witnesses to the existence of certain facts or the happening of other events from which you, as the jury, may logically conclude that the event in question actually took place and did happen. There is no reason to be afraid of circumstantial evidence just because it's circumstantial, because in dealing with something like intent, many times you are stuck simply with circumstantial evidence. That is not true here because the defendant has testified and he gave his state of mind, et cetera, on this day in January, 1983.

"No witness can be expected to come here and testify that he looked into another man's mind and saw a certain purpose or intention or certain knowledge. The only way in which a jury can determine what a man's purpose was in saying something or his intention or knowledge was at any given time, apart from his own testimony, is by determining what that man's conduct was and what the circumstances were surrounding that conduct and from those facts infer what his purpose, intention or knowledge was. To draw such an inference is not only a privilege, but a duty.

"Now, the statute we are concerned with here reads, as you heard in argument: any person who intentionally falsifies a written statement in order to obtain appointment of a public defender, assistant public defender or deputy assistant public defender shall be guilty of such and such an offense.

*"I suggest to you that you can look through these books and you will seldom see a criminal statute that is so plain and so simple, but the statutes do give us definitions which—particularly, of the word intentionally and I will read that to you, even though I don't think it will add a great deal. You know what intent is, but the statutory definition is that a person acts intentionally with respect to a result or conduct described by a statute defining an offense when his conscious objective is to cause such result or engage in*

at the end of the charge, where the court stated that "of course, intent, in addition to the statutory definition, is sometimes defined as speaking against your mind, you know one thing and you say another thing."[6]

We note, initially, that the defendant's focus on specific segments of the charge is contrary to the method of analysis approved by our Supreme Court. We will not examine any individual component of the charge out of context. It is well settled that a charge must be

*such conduct. Didn't I promise you it wouldn't add much to your understanding of what intent is?*

"Now, of course, as in any case, the state has the burden of proving any criminal case, has the burden of proving each and every element of the particular crime beyond a reasonable doubt. And, that is, of course, a heavy burden and it requires that you satisfy yourself on each of these elements, was there a statement made, a written statement. Well, there it is in evidence, doesn't seem to be much problem about that. Did the defendant make the statement. And, there doesn't seem to be much problem about that, he acknowledged the writing and I would add, parenthetically, he doesn't have to actually fill out the check marks in these boxes, he signed it and has acknowledge it as his signature. *The real crux of the case seems to be this word, intentional, did he intend to make—did he intentionally falsify a written statement for the purpose that I mentioned, the obtaining of a public defender. And, of course, intent, in addition to the statutory definition, is sometimes defined as speaking against your mind, you know one thing and you say another thing."* (Emphasis added.)

The defendant claims that the emphasized portion of the charge misconstrued the definition of intent.

[6] The defendant also contends that the trial court's remarks regarding the statutory definition of intent were improper. The trial court prefaced its reading of the statutory definition by stating that the definition was simple and that the court did not "think it [would] add a great deal." After stating the definition, i.e. "a person acts intentionally with respect to a result or conduct described by a statute defining an offense when his conscious objective is to cause such result or engage in such conduct," the court concluded, "[d]idn't I promise you it wouldn't add much to your understanding of what intent is?" While we would not advocate such remarks, we do not believe the court was being anything other than candid in making them. We have noted on another occasion that the meaning of "intentionally" is obvious; *State* v. *Lopez,* 5 Conn. App. 599, 605, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986); and we do not find error in the trial court pointing out that the statutory definition under General Statutes § 53a-3 (11) adds little to the common understanding of the term.

considered in its entirety. *State* v. *Dahlgren,* supra; *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). Individual passages comprising the jury instructions must be construed in the light of the charge as a whole. *State* v. *Dahlgren,* supra; *State* v. *Williams,* 199 Conn. 30, 37, 505 A.2d 699 (1986); *State* v. *Nims,* 8 Conn. App. 631, 641, 513 A.2d 1280 (1986). The ultimate test is whether the charge, read in its entirety, fairly presents the case to the jury so that no injustice is done. *State* v. *Storlazzi,* 191 Conn. 453, 466, 464 A.2d 829 (1983); *State* v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 645 (1974).

While the charge was to some extent inartful and contained extraneous elements, we find that it complied with the foregoing principle. Although the court's monetary example was somewhat related to the facts of the case, the court took care to instruct the jury that it was the jury's recollection of the facts, not the court's, that was to control. "The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point in issue and may comment upon the weight of the evidence so long as it does not direct or advise the jury how to decide the matter." *State* v. *Mullings,* supra. We do not find that the court, in using this example, directed the jury how to decide this matter. Furthermore, the colloquial definition of intent provided by the court, while not identical to the statutory definition, did in fact amplify it and was not inconsistent with it. In making these comments, the court was fulfilling its duty of furnishing a practical guide to the jury as to how the stated law is to be applied to the evidence. *Shea* v. *Tousignant,* 172 Conn. 54, 60, 372 A.2d 151 (1976). We find that this charge, read as a whole, fairly and correctly presented the case to the jury. *State* v. *Nims,* supra, 640–41. We further find that there is no reasonable pos-

sibility that the jury was misled by the charge. *State v. Lopez,* 5 Conn. App. 599, 602–606, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 1467 (1986).

In his third claim of error, the defendant argues that the court denied the defendant a fair trial by refusing the defendant's request that correction officers accompanying the defendant cover up their indicia of authority. The defendant contends that the court's refusal might have resulted in the jury's knowing that he was incarcerated for another crime. We find no merit to this claim. Initially, we note that the very nature of the charge for which the defendant was on trial, a false statement in an application for a public defender, by logic and common sense would lead reasonable people to believe that he would not be seeking a public defender unless he were charged with a crime. More compelling and dispositive of this claim, however, is the fact that the defendant himself took the stand and admitted that he had been convicted during the year before the trial of a crime carrying a penalty of more than one year of imprisonment. This admission had the effect of nullifying any prejudicial influence the court's action might have engendered. *State v. Yates,* 174 Conn. 16, 19, 381 A.2d 536 (1977); *State v. Barber,* 173 Conn. 153, 160, 376 A.2d 1108 (1977). Thus, even if we found error in the court's refusal of the defendant's request, the error would be rendered harmless by his admission at trial that he had been convicted of a crime requiring imprisonment.

In his fifth claim of error, the defendant contends that the court erred by refusing to allow an additional voir dire of selected jurors to determine whether they had overheard remarks regarding the defendant's incarceration. Because this claim raises the same issue that is raised in the defendant's third claim of error, i.e., whether the court's refusal may have resulted in

the defendant being tried before a jury that may have known that he was incarcerated, our discussion of that claim is dispositive of this argument.

There is no error.

In this opinion the other judges concurred.