## STATE OF CONNECTICUT *v.* VANCE WRIGHT
## (4186)

BORDEN, DALY and BIELUCH, Js.

Argued October 17—decision released December 9, 1986

*Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Sean C. Butterly,* special assistant state's attorney, with whom, on the brief, was *John A. Connelly,* state's attorney, for the appellee (state).

BORDEN, J. After a jury trial, the defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4). On appeal, the defendant claims that the trial court erred (1) in its instructions defining reasonable doubt by unconstitutionally diluting the state's burden of proof, and (2) in refusing to instruct the jury on the reliability of identification tes-

timony in accordance with the defendant's request to charge.[1] We find no error.

The jury could reasonably have found the following facts: On the evening of February 4, 1984, a black male entered Cavanaugh's Package Store in Waterbury, pointed a sawed-off shotgun at the owner of the store, and forced him to turn over money from the cash register. The owner, in a statement to the police after the incident and at trial, described the robber as well dressed, about five feet eleven, with a close cropped afro hair style, moderate skin tone, and wearing a leather coat and gloves. While he did not notice anything in particular about the assailant's facial features or hair, he testified that he did have an opportunity to observe his face. The owner was unable to identify the defendant in a photo array conducted after the incident, but did identify the defendant during the trial as the man who robbed him, recognizing the defendant's nose and eyes.

A female employee, also in the store at the time of the robbery, described the robber in a statement to the police as a black male, approximately six feet tall, with a thin build and a short cropped haircut, dark skin and a small mustache, wearing a black jacket and dark trousers. She further testified that she had a clear view of the robber for thirty seconds to one minute. This employee failed to identify the defendant from two photographic arrays following the robbery. She did, however, less than two weeks after the incident, identify his photograph from a third array presented to her first at the liquor store and subsequently repeated at the

---

[1] The defendant also claims on appeal that the trial court erred in its charge on the credibility of witnesses. He did not submit a request to charge or take an exception to this instruction. See Practice Book § 854 (now § 852). Nor has he sought review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We therefore decline to review this claim.

Waterbury police station. She also identified the defendant in court during trial as the person who robbed the liquor store.

The defendant attacked the reliability of the identification testimony and presented an alibi defense. The defendant's grandmother testified that on the date of the robbery the defendant had full sideburns, a goatee and a small beard. The defendant's girlfriend and another friend both corroborated his grandmother's testimony as to his facial hair on the date of the robbery. Both of these witnesses further testified that the defendant was with them the entire night of the robbery. Neither witness, upon discovering that the defendant had been arrested for a crime, brought this fact to the state's attention until the day of the trial. The defendant did not testify in his own behalf.

I

The defendant first mounts a multifaceted attack on the trial court's instruction on reasonable doubt. He contends that it diluted the constitutional requirement of proof beyond a reasonable doubt. Since the defendant did not except to the charge on this basis, he seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).[2] Our Supreme Court has held that a similar claim is reviewable under *State* v. *Evans,* supra. See *State* v. *Moss,* 189 Conn. 364, 365, 456 A.2d 274 (1983). We therefore review this claim.

The defendant first argues that the trial court erred in its instruction on reasonable doubt by overemphasizing the fact that the state's burden of proof was not absolute and by failing to impress upon the jury the need for them to reach a "subjective state of near cer-

[2] The defendant, in his brief, claims that he presented the trial court with a written request to charge on reasonable doubt. Examination of the request to charge discloses, however, that the subject matter claimed to be erroneously omitted was not covered by the request to charge.

titude," a standard approved by our Supreme Court in *State* v. *DelVecchio,* 191 Conn. 412, 419, 464 A.2d 813 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979). In the recent case of *State* v. *Ryerson,* 201 Conn. 333, 341–42, 514 A.2d 337 (1986), our Supreme Court held that the "near certitude" language of *State* v. *DelVecchio,* supra, was not intended to be a required part of future jury instructions. See also *State* v. *Pannone,* 9 Conn. App. 111, 115, 516 A.2d 1359 (1986). Therefore, failure to include this language in the jury change was not erroneous.

The defendant next claims that the charge unconstitutionally diluted the state's burden of proof to establish guilt beyond a reasonable doubt by inviting the jury to think of reasonable doubt in quantitative terms. The defendant focuses in particular on the following segment of the charge: "When you came here the first day, of course, you were told about civil cases, where the person who has the burden of proof in a civil case and in a civil case also a defendant can take on the burden of proof too, which is not the situation here. But, in a civil case a person who has the burden, be it the plaintiff or defendant, must simply establish the point by convincing you ever so slightly that it's more likely than not that a particular thing occurred. At the other end of the scale we have absolute proof. I suppose some physical laws of nature and mathematics might be, water runs downhill, and that sort of thing, but certainly things that are susceptible of such proof are few and far between and the state is not held to any such burden. The state's burden is heavier than that which falls on the party to a civil case, but it is not required to prove the elements of the crime absolutely."

The defendant claims that this instruction effectively lightened the state's burden by diverting the jury's

attention from the quality of the evidence, thereby focusing the jury's attention on the quantity of the evidence. The wording of the instruction, the defendant argues, may have encouraged the jury to set their own standard of proof somewhere between the civil standard of over 50 percent and the absolute standard of 100 percent, thus diluting the constitutionally required standard of proof beyond a reasonable doubt.

It is well settled that a charge must be considered in its entirety, and it is contrary to the method of analysis approved by our Supreme Court to focus on specific segments. *State* v. *Pannone,* supra, 119. " 'Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury.' *Miles* v. *United States,* 103 U.S. 304, 312, 26 L. Ed 481 (1881). More recently, Judge Bazelon aptly observed that '[j]udicial attempts to clarify the meaning of the phrase "reasonable doubt" by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead.' *United States* v. *Pinkney,* 551 F.2d 1241, 1244 (D.C. Cir. 1976) . . . . 'While an attempt by the trial court to clarify the meaning of reasonable doubt is not by itself reversible error . . . the question on appeal is whether the court's statements correctly conveyed the concept of reasonable doubt to the jury.' " (Citations and footnote omitted.) *State* v. *DelVecchio,* supra, 420–21.

We note first that in our recent case of *State* v. *Pannone,* supra, 116 n.4, we upheld a charge on reasonable doubt that contained very similar language. The defendant in that case did not, however, claim that the charge had the effect of diluting the standard of proof by encouraging the jury to set their own standard. Therefore, we turn to the merits of the defendant's claim.

The defendant misconstrues the court's charge, which merely sought to impress upon the jury the qualitative difference between, on the one hand, the civil and criminal standards of proof and, on the other hand, absolute proof. The charge fully explained the meaning of proof beyond a reasonable doubt. The defendant does not challenge the sufficiency or accuracy of that portion of the charge. The court also instructed the jury that the state's burden is heavier in a criminal case than in a civil case but lighter than absolute proof. In doing so, however, the court never referred to percentages or numerical standards; thus it did not encourage the jury to quantify the element finding process. Nor did the instruction invite the jury to determine for themselves what constitutes proof beyond a reasonable doubt. Cf. *State* v. *DelVecchio*, supra, 417–18 (instruction using a football field simile and telling jury "it . . . is up to you to decide" where reasonable doubt lies between fifty yard line, and one hundred yard line held to dilute constitutional standard of proof beyond a reasonable doubt). We hold that the trial court's instruction did not unconstitutionally dilute the state's burden of proof. See *State* v. *Moss*, supra, 368–69 (jury instruction comparing civil burden of proof with criminal standard upheld).

The defendant's final attack on the reasonable doubt charge is that the trial court failed to instruct properly on the relationship between reasonable doubt and circumstantial evidence. See *State* v. *Rodgers*, 198 Conn. 53, 502 A.2d 360 (1985). The defendant claims that the instruction given by the trial court was similar to the instruction given in *State* v. *Rodgers*, supra, 57, which the Supreme Court found to be erroneous. In *State* v. *Rodgers*, supra, the court instructed the jury that " 'an inference may be drawn [from circumstantial evidence] provided "that it is more probable that the fact to be inferred is true." *State* v. *Rodgers*, supra,

57.' " *State* v. *Farrar,* 7 Conn. App. 149, 154, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986). In this case, however, the court instructed that "you are entitled to draw inferences from such facts as you may find, but they must be fair and reasonable inferences."[3]

The defendant misreads *State* v. *Rodgers,* supra, to require that the trial court instruct the jury on the manner in which it must draw inferences from circumstantial evidence, namely, that the inference drawing process is subject to a standard of proof beyond a reasonable doubt. We read *State* v. *Rodgers,* supra, however, as finding reversible error in an instruction that *dilutes* the finding of classically inferred facts, such as

---

[3] The entire charge on circumstantial evidence, of which the quoted language in the text is a part, was:

"Now, of course, in assessing the evidence here you are not left solely with the testimony and the exhibits, you are entitled to draw inferences from such facts as you may find, but they must be fair and reasonable inferences, they must be based on the facts and those facts are based on the evidence, kind of a pyramid effect. You have the evidence on those, you have the facts and finally inferences, if you wish to draw them. And, again, it's a matter of common sense, with no speculation.

"Now, we had very little about circumstantial evidence here. But, there is one area where circumstantial evidence always comes in. Now, direct evidence, of course, is the testimony of an eyewitness who comes into court and says that he saw the event happen. Circumstantial evidence of an event is the testimony of witnesses to the existence of certain facts or the happening of other events from which the jury may logically conclude that the event in question did happen. And, there is no reason to be afraid of circumstantial evidence simply because it is circumstantial, because we rely on circumstantial evidence necessarily everyday. And, of course, we must rely on circumstantial evidence most of the time in determining what a person's intent was. The only way in which a jury can determine what the purpose was, determining what that man's conduct was and what the circumstances surrounding that conduct were and from those infer what his purpose, intention or knowledge was. To draw such an inference is not only a privilege, but also a duty of a jury, provided, of course, the inference drawn is a reasonable inference. In this case, therefore, it will be part of your duty to draw all reasonable inferences from the conduct of the defendant, in the light of the surrounding circumstances, as to what his purpose, intention or knowledge was in his mind at the time of the event, if, indeed, you find that he was on the scene of the event."

intent, by reference to the civil standard of proof.[4] It is entirely proper to instruct the jury that they are "entitled to draw any *reasonable* and *logical* inference based upon the facts found proven." (Emphasis added.) *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); *State* v. *Dumlao,* 3 Conn. App. 607, 616, 491 A.2d 404 (1985). The trial court's instruction on circumstantial evidence is not governed by the decision in *State* v. *Rodgers,* supra. See also *State* v. *Hoeplinger,* 9 Conn. App. 147, 158–59, 517 A.2d 632 (1986).

## II

The defendant's final claim of error is that the court erred by refusing to give a requested jury charge on the dangers of eyewitness testimony. The defendant argues that in order to minimize the danger of misidentification in this case, a jury instruction based on *Simmons* v. *United States,* 390 U.S. 377, 383–84, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), and *State* v. *Harden,* 175 Conn. 315, 320–22, 398 A.2d 1169 (1978), should have been given regarding the possible dangers of suggestion inherent in certain identification proce-

---

[4] We note, moreover, that even if we were to read *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985), to require an affirmative charge on the standard of proof to apply when drawing inferences from facts, this case would not be controlled by *Rodgers.* The principal factual issue in dispute in this case was identification. Therefore, this case would be controlled by *State* v. *Reddick,* 197 Conn. 115, 496 A. 2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). See *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 155–56, 508 A.2d 49 (1986). As we stated in *State* v. *Farrar,* supra, where "the principal factual issue is identity, which is not classically dependent upon circumstantial evidence for its proof, the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence." The trial court in this case made repeated references to the state's burden of proof beyond a reasonable doubt both in its general charge and supplemental identification charge. We conclude, therefore, that it is not reasonably possible that the jury was misled. See *State* v. *Hoeplinger,* 9 Conn. App. 147, 517 A.2d 632 (1986).

dures. The defendant claims that the special circumstances surrounding the identifications by two witnesses merited the requested instruction, and that the claimed failure to charge the jury deprived them of the opportunity to evaluate fully the reliability of the identifications.

The defendant presented the trial court with a request to charge based on language from *Simmons* v. *United States,* supra, and *State* v. *Harden,* supra. After the trial court completed its jury instructions, in which it did not charge on identification testimony, the defendant took an exception. Thereafter, the court gave a lengthy supplemental charge on identification. The defendant took an exception to the supplemental charge, and claims on appeal that the trial court failed to charge substantially as requested by him.

Our Supreme Court has stated that while "a court should grant a request for a charge regarding the dangers of misidentification in an appropriate case, we have not found reversible error in the failure to do so where 'the conviction of the defendant did not turn upon the testimony of eyewitnesses who were uncertain, unclear or inconsistent.' *State* v. *Harden,* [supra, 322]." *State* v. *George,* 194 Conn. 361, 375, 481 A.2d 1068 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985); see also, *State* v. *Jenkins,* 8 Conn. App. 35, 39, 510 A.2d 1370 (1986). We therefore determine whether the factual circumstances of this case indicate that it exhibits " 'the special difficulties often presented by identification testimony that would require additional information be given to the jury in order . . . to repose confidence in their ability to evaluate the reliability of the identification.' *United States* v. *Telfaire,* [469 F.2d 552, 556 (D.C. Cir. 1972)]." *State* v. *Harrell,* 199 Conn. 255, 270–71, 506 A.2d 1041 (1986).

The defendant claims that the failure of the two witnesses to describe the robber's facial hair, in light of testimony from the defendant's grandmother, girlfriend and another friend that he had a mustache, sideburns and a goatee on the day of the robbery, in and of itself constitutes a circumstance mandating a more detailed instruction. We disagree.

The testimony of the state's identification witnesses was not "uncertain, unclear or inconsistent." *State* v. *Harden,* supra. Both witnesses had ample opportunity to observe the robber, and gave accurate and consistent descriptions of the defendant. Both witnesses made identifications of which they were absolutely certain. One witness was able independently to select the defendant from a photographic array on two occasions, and both made in-court identifications. Thus, this case does not exhibit the special difficulties which would require that the requested charge be given. The defendant's claim of inconsistency with respect to his facial hair at the time of the robbery does not mandate more detailed instructions, especially in light of the extensive cross-examination, by the defendant, of the eyewitnesses as to their ability to see and identify the man who committed the robbery. *State* v. *Harrell,* supra, 271.

Additionally, while the trial court's supplemental charge did not precisely mirror the requested charge, it basically incorporated the substance of *Simmons* and *Harden.* "It is not error for a trial court to refuse to charge a jury in the exact words of a requested instruction, as long as the requested charge is given in substance." *State* v. *Jenkins,* supra, 40; see also *State* v. *Elliott,* 8 Conn. App. 566, 573, 513 A.2d 1285 (1986). The court instructed the jury that they should consider the witnesses' ability and capacity to observe the robber, their credibility, and any suggestiveness in the identification procedures. Further, the court instructed

the jury on three occasions that they must find beyond a reasonable doubt that it was the defendant who committed the crime. The court substantially complied with the defendant's request to charge.

There is no error.

In this opinion the other judges concurred.