STATE OF CONNECTICUT *v.* FRANK W. BANKS
(AC 15666)

O'Connell, Heiman and Schaller, Js.

Argued January 28—officially released June 10, 1997

*Bruce A. Sturman,* public defender, for the appellant (defendant).

*Lawrence J. Tytla,* senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a jury trial, of four counts of harassment in the first degree in violation of General Statutes § 53a-182b (a).[1] He claims that the trial court improperly denied his motion to bifurcate the trial. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. While the defendant was incarcerated, he wrote letters to the Superior Court judge who had sentenced him. In his brief, the defendant concedes that "it is fair to characterize [those letters] as vile and derogatory, threatening harm to the judge and his family, with anti-Semitic and Nazi overtones." The trial court properly cautioned the jury that evidence of the defendant's prior convictions was not introduced to show a propensity to commit crimes, but only to establish an element of the crime of harassment in the first degree.[2]

---

[1] General Statutes § 53a-182b (a) provides in relevant part: "A person is guilty of harassment in the first degree when, with the intent to harass, annoy, alarm or terrorize another person, he threatens to kill or physically injure that person or any other person, and communicates such threat by telephone, or by telegraph, mail computer network, as defined in section 53a-250, or any other form of written communication, in a manner likely to cause annoyance or alarm *and has been convicted of . . . a class A felony [or] a class B felony . . . .*" (Emphasis added.)

[2] The trial court instructed the jury as follows: "[T]he state has offered evidence that the defendant, Mr. Banks here, has previously been convicted of crimes. As a general rule, evidence of other crimes is not admissible to prove a defendant guilty of the crimes with which he is now charged. If you find that the defendant has previously been convicted of crimes you must not consider that as evidence of bad character or a tendency to commit criminal acts. Evidence of the defendant's prior conviction has been offered only for the purpose of establishing an element of the crimes with which he is presently charged, for the purpose of identification of the defendant with the crimes presently charged and for the purpose of showing a motive on the part of the defendant to commit the crimes presently charged. If you find from the evidence that the defendant has previously been convicted of crimes, I emphasize that you may consider such evidence of convictions only for those specific purposes that I just mentioned and not as evidence of bad character or propensity to commit criminal conduct."

The defendant had previously been convicted of murder, a class A felony, and two counts of attempted murder, class B felonies, and sentenced to imprisonment for a term of not less than twenty-five years to life.[3] Defense counsel attempted to prevent the jury from learning that his client was serving a sentence for murder and attempted murder by seeking bifurcation to prevent the state from establishing the defendant's prior convictions until the other elements of the crime of harassment were proven. The defendant asserted in the motion that the jury would be unduly prejudiced against him if evidence of the convictions was introduced before the jury first determined whether the defendant was guilty of harassment. The defendant emphasized that the striking similarity between the words "kill" and "physically injure" in § 53a-182b and the offenses of murder and assault in the first degree was particularly prejudicial. The trial court denied the motion to bifurcate, and the defendant argues that the denial deprived him of a fair trial.

Our Supreme Court and this court have both discussed the problem inherent in a prosecution for a crime that makes proof of a prior conviction an element of the crime being prosecuted. *State* v. *Jones*, 234 Conn. 324, 662 A.2d 1199 (1995); *State* v. *Joyce*, 45 Conn. App. 390, 696 A.2d 993 (1997); *State* v. *Banta*, 15 Conn. App. 161, 554 A.2d 1226, cert. denied, 209 Conn. 815, 550 A.2d 1086 (1988).

The state introduced evidence that the defendant was serving twenty-five years to life for felony convictions. The state did not, however, introduce evidence of the specific nature of the felony convictions. The previous sentencing judge testified only in terms of sentencing

---

[3] The defendant concedes that the class B felony was attempted murder despite indication in part of the record that the convictions may have been for assault in the first degree. Because both crimes are class B felonies, the difference is of no significance in this appeal.

the defendant for a class A and two class B felonies. The words "murder" and "attempted murder" were never used by any state's witnesses.

While testifying on his own behalf at trial, and when no question was pending, the defendant volunteered that he was convicted of murder and rebuked the state's attorney for not bringing that fact to the jury's attention.[4] Even if we assume, arguendo, that the trial court's ruling on the bifurcation motion was improper, the defendant's voluntary announcement of his murder conviction rendered any error harmless.

It is fundamental that it is not reversible error where evidence that comes into a case through an erroneous ruling is later introduced through another source. In *State* v. *Pannone*, 9 Conn. App. 111, 120, 516 A.2d 1359 (1986), cert. denied, 202 Conn. 804, 519 A.2d 1208 (1987), the trial court denied the defendant's request that the correction officers accompanying him in the courtroom wear plain clothes to prevent the jury from learning that he was incarcerated. In *Pannone*, the defendant argued that the trial court's denial of his motion deprived him of a fair trial because the jury would infer from the uniformed guards that the defendant was presently incarcerated. In *Pannone*, "the defendant himself took the stand and admitted that he

---

[4] "[State's Attorney]: And presumably you thought that it would upset him because if the letters didn't upset him he wouldn't do anything about them, isn't that right?

"[The Defendant]: Yeah, because judges are hot shit. You're not supposed to threaten them.

"[State's Attorney]: And now—

"[The Defendant]: *And the twenty-five to life is murder, by the way, how come you don't come into that?*

"[State's Attorney]: The twenty-five to life is for murder?

"[The Defendant]: You keep on saying that twenty-five to life and *I thought that the jury has to hear that it is for murder.*

"[State's Attorney]: Well, now that you have told them they know.

"[The Defendant]: Yeah." (Emphasis added.)

had been convicted during the year before the trial of a crime carrying a penalty of more than one year of imprisonment. This admission had the effect of nullifying any prejudicial influence the court's action might have engendered. . . . Thus, even if we found error in the court's refusal of the defendant's request, the error would be rendered harmless by his admission at trial that he had been convicted of a crime requiring imprisonment." (Citations omitted.) Id.

In *State* v. *Yates*, 174 Conn. 16, 19, 381 A.2d 536 (1977), the trial court required defense witnesses to testify while dressed in prison attire.[5] The defendant objected on the grounds that the witnesses' credibility would be diminished in front of the jury. The trial court agreed that "[i]n the minds of the jurors the credibility of such witnesses can be affected in the same manner as the presumption of innocence can be diminished by the defendant's appearance in prison garb." Id. The Supreme Court held, however, that "whatever prejudice may have been caused by the witnesses' attire was nullified by the fact that the witnesses themselves testified to their prior felony convictions . . . . The error viewed in the context of that testimony, therefore, cannot be said to be prejudicial or to have deprived the defendant of a fair trial." Id.

Here, the defendant's admission that he was presently incarcerated for murder had the effect of nullifying any prejudicial influence that the court's denial of the motion to bifurcate might have engendered. Accordingly, it would be a futile exercise for this court to perform an analysis of the defendant's claim that the denial of his motion to bifurcate was improper. We, therefore, decline to review it.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[5] This was prior to the adoption of Practice Book § 967 which prohibits requiring witnesses to appear in court in distinctive prison clothing.