STATE OF CONNECTICUT *v.* JOHN S. GIANNOTTI
(3104)

DUPONT, C. J., DALY and BIELUCH, Js.

Argued March 18—decision released June 17, 1986

*Bruce L. Levin,* special public defender, for the appellant (defendant).

*Mary Lesser,* special deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Patrick J. Clifford* and *Julia DiCocco Dewey,* assistant state's attorneys, for the appellee (state).

BIELUCH, J. The defendant appeals from his conviction of the crimes of sexual assault in the first degree in violation of General Statutes §§ 53a-70 and 53a-8; attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49, 53a-70 and 53a-8; assault in the second degree in violation of General Statutes §§ 53a-60 and 53a-8; conspiracy to commit sexual assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-70; and the lesser included offense of unlawful restraint in the first degree in violation of General Statutes § 53a-95.[1]

The jury could reasonably have found the following facts. On the evening of September 30, 1983, the defendant and the complainant were seen together with a tall blond man, later identified as Brendon Carlson,[2] drinking at Billy's Cafe in West Haven. At some point during the evening, as a result of a commotion near the restrooms in the back of the premises, the com-

[1] Although the judgment file in this case indicates that the defendant was convicted of unlawful restraint as a lesser included offense of the conspiracy charge, a review of the transcript demonstrates that, in fact, the defendant was convicted of, and sentenced for, the crime of unlawful restraint as a lesser included offense of the charge of kidnapping in the first degree.

[2] Carlson was tried separately with respect to the incident at issue here.

plainant and Carlson were each asked to leave the premises. When they left, the defendant left with them, pausing long enough to beckon to two other men, John Cholko and Ben Conley, to join them, which they did.

Once outside, the defendant threatened the complainant, stating that he had a weapon, and forced her into his car, a Maverick. The defendant then struck the complainant on the head and drove away with her. Cholko and Conley followed the defendant in Cholko's Mazda and Carlson followed in his Pontiac. All three cars then converged upon a parking lot across from the Yankee Inn, about six tenths of a mile distant from Billy's Cafe.

At the parking lot, Cholko and Carlson parked their vehicles approximately fifty yards away from the defendant's car. Some time later Cholko and Conley left the parking lot. The defendant, meanwhile, had become verbally and physically abusive toward the complainant. He beat her, and eventually she escaped, fell or was pushed from the car onto the ground. At that point, Carlson joined the defendant in beating the complainant, dragging her around the parking lot and tearing off her clothes. The defendant unsuccessfully tried to force his penis into her mouth. Carlson attempted vaginal intercourse. The defendant, however, succeeded in penetrating her vagina. Eventually, the two men left the complainant at the parking lot. Unable to find most of her clothes, the complainant walked, without them, approximately four blocks to her home. The complainant's boyfriend, with whom she lived at that time, called the police shortly after her arrival.

The complainant was subsequently taken to the Yale-New Haven Hospital by ambulance. She remained in the hospital approximately nine days as a result of her beating. Subsequent surgery was required to implant a wire in her jaw.

The defendant was tried to a jury and testimony was taken over a three day period. The jury subsequently found the defendant guilty as charged on four counts of the second substituted information, namely, sexual assault in the first degree, attempted sexual assault in the first degree, assault in the second degree and conspiracy to commit sexual assault in the first degree. In addition, on the fifth count, kidnapping in the first degree, he was found guilty of the lesser included offense of unlawful restraint in the first degree. As a result of these convictions, the defendant was sentenced to a term of imprisonment of twenty-one years.

The defendant claims five errors in the proceedings leading to his convictions. We will review only four of them.[3]

The defendant's first claim is that the court's charge on accessory liability was "so wholly inadequate as to constitute plain and harmful error." The defendant indicates in his brief that the only exception taken to this charge was with regard to the court's alleged failure to charge the jury on the element of specific intent for accessory liability. He nonetheless implores us to review this claim pursuant to *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Having reviewed the claims made by the defendant in his brief, we conclude that resort to *Evans* is unnecessary.

Although the defendant frames his dispute with the court's charge on accessory liability in two ways, both approaches to the issue focus on the court's alleged failure to instruct the jury adequately with regard to the issue of the defendant's intent. First, the defendant

---

[3] The remaining claim is that the defendant received ineffective assistance of counsel. The defendant concedes, however, that a petition for a writ of habeas corpus is the appropriate vehicle by which to raise this claim. *State* v. *Leecan,* 198 Conn. 517, 542, 504 A.2d 480 (1986); *State* v. *Rivera,* 196 Conn. 567, 571, 494 A.2d 570 (1985); *Miller* v. *Angliker,* 4 Conn. App. 406, 416–17, 494 A.2d 1226 (1985).

contests the court's failure to define a variety of terms used in the accessory liability statute. General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." Specifically, the defendant asserts that the words "solicits," "requests," "commands," "importunes" and the phrase "intentionally aids" should have been defined for the jury.

The defendant cites, as authority for this proposition *State* v. *Enanno,* 96 Conn. 420, 425, 114 A. 386 (1921). There the court stated that "[t]he distinction between mere presence as an inactive companion, passive acquiescence, innocent acts which may in fact have aided the one who was doing physically the act charged, on the one hand, and, on the other, criminality in intent and community of unlawful purposes and actions, the meaning of the terms 'aiding' and 'abetting,' and the other descriptive words used in the statute [General Statutes (1918 Rev.) § 6716] pointing to the necessity of what we may call a sort of partnership in purpose and conduct,—these matters, and perhaps others, according to the circumstances of the particular case, should have been called to the attention of the jury . . . ." Id., 425. Thus, the court's purpose in requiring explanation of the so-called "descriptive words" in *Enanno* was to emphasize their latent intent element.

The defendant's second approach to this issue is to dispute the court's failure to define the meaning of the term "mental state" as those words are used in § 53a-8. Once again, this argument focuses on the element of intent for accessory liability.

The court in this case instructed the jury that the defendant had been charged as an accessory only with respect to three of the five counts in the information. Each time the court instructed the jury on one of those counts, it informed the jury that the defendant's liability as an accessory was to be considered with respect to that offense. The court read General Statutes § 53a-8 to the jury in its entirety. The court then summarized § 53a-8 by stating that "it makes an accessory liable to the same extent as the principal." Finally, the court gave the jury general instructions on the element of intent in criminal behavior.

Although the court did not specifically define each of the "descriptive words" enumerated by the defendant, the court did make it clear that the jury was obligated to find that the defendant intended to aid or abet another in committing the crime charged prior to finding him guilty. The court's reading of the statute would suffice to make that point clear. None of the descriptive words in § 53a-8 is so complex or rooted in legal meaning as to render the average juror incapable of understanding its meaning. Further, the requirement of the defendant's intent, in aiding or abetting another, to commit the underlying offense was adequately explained by the court's general charge on intent. "The test is what 'a reasonable juror hearing this instruction within the context of the entire charge would naturally assume . . . .' *State* v. *Bouleware,* 183 Conn. 444, 447–48, 441 A.2d 1 (1981)." *State* v. *Lopez,* 5 Conn. App. 599, 605, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986). No juror could reasonably have assumed the court's instructions to mean that the defendant could be convicted pursuant to § 53a-8: (1) without intending to aid another; and (2) by giving such aid, without intending to commit the

underlying offense charged "with the criminal intent and common intent of the principal."[4]

The defendant's second claim of error relates to the court's instruction that "[y]ou will have with you the information, which lists the charges, as I've gone through them with you here this afternoon, as well as the exhibits; and you may use them in any way in which you find them useful in the course of your delibera- tions." The defendant asserts that this instruction "credited the information as evidence of guilt." This argument is without merit since, in a jury charge span- ning fifty-three transcript pages, only three pages after the statement to which the defendant objects, the court expressly stated that "the information itself will go to you as the statement of the charges, but that's not evi- dence. Any of the other exhibits that go to you are evi- dence before you." This claim of error represents an attempt to dissect a small portion of the charge—a prac- tice which we have repeatedly declined to employ. *State* v. *Lopez,* supra, 604.

The defendant's third claim of error relates to the court's instructions with respect to the fifth count of the information, which charged the defendant with con- spiracy to commit sexual assault in the first degree. The defendant argues that the court "failed to ade- quately inform the jury that the defendant must have conspired with specific intent to commit the crime of sexual assault in the first degree." The essence of this claim is that the court repeatedly referred, in the course of its instructions, to conspiracy to commit "a crime." As a result of these statements, the defendant claims

[4] We also note that the defendant has objected to the court's summary that § 53a-8 "makes an accessory liable to the same extent as a principal." He asserts that this summary, without more, is an inadequate instruction on accessory liability. As we have noted, however, that summary was *not* the court's sole or complete instruction on accessory liability. Thus, this argument is without merit.

that the jury might have been misled into believing that it would suffice for them to find that the defendant conspired to commit any offense, or a different offense, in order to convict him of the conspiracy charge. Once again, this argument is the result of a critical and defective dissection of the charge.

On three occasions during its instruction on the conspiracy charge, the court stated clearly that the jury was obligated to find the defendant guilty of conspiring to commit sexual assault in the first degree in order to convict him of the offense. The court charged that (1) "[t]he first thing that you must decide is, did this accused form an agreement with one or more persons to commit the crime of sexual assault in the first degree?"; (2) "you must be satisfied beyond a reasonable doubt, in the first place, that he knowingly participated in the unlawful agreement, *the unlawful agreement charged in the information*" (emphasis added); and (3) "[the state] must prove that this accused entered into an agreement with at least one other to commit the crime of sexual assault in the first degree." Thus, the mere fact that, in discussing the general definition of conspiracy with the jury, the court referred to an agreement to commit "a crime" cannot be said to have been misleading in this case.

Finally, the defendant asserts that his conviction of both sexual assault in the first degree and attempted sexual assault in the first degree constituted a violation of the constitutional prohibition against double jeopardy. We disagree.

" 'Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met.' *State* v. *Devino,* [195 Conn. 70, 74,

485 A.2d 1302 (1985)] . . . ." *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986); see also *State* v. *Thompson,* 197 Conn. 67, 72, 495 A.2d 1054 (1985). In the present case, each individual act or attempted act of forcible sexual intercourse within the definition of that term in General Statutes § 53a-65 (2) constituted a separate crime. *State* v. *Frazier,* 185 Conn. 211, 229, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). The evidence previously reviewed was sufficient to support by specific conduct the verdicts of conviction for sexual assault in the first degree and attempted sexual assault in the first degree. The sufficiency of the evidence to support those verdicts was admitted by defense counsel at argument on appeal.

There is no error.

In this opinion the other judges concurred.