### STATE OF CONNECTICUT *v.* PATRICK T. ROGERS
### (3163)

HULL, SPALLONE and BIELUCH, Js.

Argued September 17—decision released December 2, 1986

*John R. Williams,* for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *John J. Kelly,* chief state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

BIELUCH, J. After a jury trial, the defendant was found guilty of sexual assault in the first degree, a violation of General Statutes § 53a-70 (a). A judgment of conviction was rendered upon the jury's verdict and the defendant was sentenced to a term of six years.[1] The defendant has appealed from the judgment of conviction, alleging error in that he was denied his right to testify on his own behalf when the court precluded his testimony concerning prior false rape accusations allegedly made by the victim. He also claims that the trial court erred by denying him the right to the assistance of counsel, the right to be free from compelled self-incrimination and his due process right to a fair trial by permitting the state to offer as evidence of guilt his request to see an attorney after being given his *Miranda* warnings. We find no error.

The jury could reasonably have found the facts to be as follows: The defendant met the victim in April, 1983. They had engaged in consensual sexual intercourse at the victim's apartment on several occasions prior to August 27, 1983. During this time, the victim continued to see other men, rejecting the defendant's repeated requests that she be his steady girlfriend.

---

[1] The defendant was charged by information with sexual assault in the first degree, in violation of General Statutes § 53a-70 (a), burglary in the first degree, in violation of General Statutes § 53a-101 (a) (2), and unlawful restraint in the first degree, in violation of General Statutes § 53a-95 (a). All three offenses were alleged to have been committed on August 27, 1983. The defendant was also charged in two other informations with separate additional counts of sexual assault in the first degree upon the same victim on August 10 and August 12, 1983, respectively. The three cases were consolidated for trial and resulted in the single conviction now on appeal.

Shortly after midnight on August 27, 1983, the defendant encountered the victim at a bar. The victim resisted the defendant's attempt to talk to her, after which he pulled at her and ordered her to sit down. When she started to get up, a bartender came over and a fight broke out between him and the defendant. The defendant was removed from the bar and the fight continued outside.

The victim remained at the bar until it closed at 3 a.m. After visiting with a friend, she returned to her apartment at approximately 4 a.m. to find the defendant in her bed. She yelled at him to "get out. I don't want you to stay here." Angry at her for not going out with him that evening, he said he was going to spend the night with her and started to take off her clothes. She could not stop him from disrobing her.

During the hours that followed, the defendant forced her to have sexual intercourse several times. It would serve no useful purpose to recite the sordid details surrounding the sexual assaults. Suffice it to say that the manner in which the defendant sexually attacked his victim belies any allegation of her consent which the defense asserted at trial. The evidence demonstrates that during the assault the defendant pinned the victim's arms with his knees, struck her in the face with his hand, and stuck a towel in her mouth to deaden the sound of her crying. The victim eventually escaped from the defendant, and ran to a nearby house. The police were then called and the victim was taken to a hospital.

The defendant was arrested and brought to the Milford police station, where he was informed of his *Miranda* rights, after which he orally waived his right to remain silent and his right to counsel. He told the police that he had sexual relations with the victim that morning, admitting specifically that they had sexual intercourse. He claimed that these activities were at

first consensual, "but then she got upset." After that statement, the defendant concluded by saying, "I don't want to talk to you anymore. I want a lawyer." The police stopped questioning him at that point.

I

The defendant's first claim is that the court denied his right to testify concerning prior false rape accusations allegedly made by the complaining witness. The defendant claims that by doing so the court denied him his right to testify on his own behalf, as guaranteed by the fifth, sixth and fourteenth amendments to the United States constitution and by the constitution of Connecticut, article first, § 8.

The background relevant to this claim is as follows: The defendant sought to introduce evidence to establish that the victim had made a false accusation of rape arising out of an alleged incident which had occurred two or three years earlier when she was picked up while hitchhiking. During the defense counsel's cross-examination of the victim out of the presence of the jury, she denied accusing anyone of rape on that occasion.

The defendant subsequently testified in his own defense. During his direct testimony, out of the presence of the jury, he related a conversation with the victim in which she told him that while hitchhiking home from a bar, she was picked up by two men in a white Corvette who took her to a hotel room where they raped her. The following morning they brought her home. The defendant then went on to state that "[s]he said that it did happen . . . she said she was kind of high at the time, and maybe [it] wasn't a rape." That was the sole basis for the claim of a prior false accusation of rape. The defendant attempted to offer this evidence

to impeach the victim's credibility, even though no criminal or other complaint by her had ever been made concerning that incident.

The trial court ruled that the proffered evidence was inadmissible to impeach the complainant's credibility. The defendant excepted to the trial court's ruling. The defendant now claims for the first time that this extrinsic evidence was proper to show bias, and that the exclusion of such evidence violated the defendant's right to testify in his own behalf.

Ordinarily, "[o]ur review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection. Practice Book §§ 3063 [now § 4185], 288; *State* v. *Rothenberg,* 195 Conn. 253, 262, 487 A.2d 545 (1985); *State* v. *Braman,* 191 Conn. 670, 684–85, 469 A.2d 760 (1983). The reason for this rule is clear: it is to alert the trial court to an error while there is time to correct it; *State* v. *Rothenberg,* supra, 263; *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984); and to give the opposing party an opportunity to argue against the objection at trial. To permit a party to raise a different ground on appeal than was raised during trial would amount to 'trial by ambuscade,' unfair both to the trial court and to the opposing party. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982); *State* v. *DeGennaro,* 147 Conn. 296, 304, 160 A.2d 480, cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960)." (Footnote omitted.) *State* v. *Sinclair,* 197 Conn. 574, 579, 500 A.2d 539 (1985). The trial court was correct in ruling that the extrinsic evidence was inadmissible to impeach the victim's credibility. The matter to which the defendant attempted to testify was clearly collateral to the present case. Extrinsic evidence is not admissible to impeach the credibility of a witness on a collateral issue. *State* v. *Carbone,* 172 Conn. 242, 262, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977).

The defendant failed to offer this evidence to show bias, and made no objection at trial on that ground. On appeal, however, he has couched this claim in terms of a deprivation of a fundamental constitutional right. We need to decide, therefore, whether this claim reflects the "exceptional circumstances" reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). See *State* v. *Delgado,* 8 Conn. App. 273, 276, 513 A.2d 701 (1986).

"An appellate court must ask a series of questions when an *Evans* claim is made and answer each in the affirmative before continuing to the succeeding question. These questions are as follows: (1) is there an issue raised which facially implicates a constitutional right; (2) is the record sufficient to consider that constitutional claim on its merits; (3) was there, in fact, based on the record, a deprivation of a constitutional right of a criminal defendant; and (4) did the deprivation deny the defendant a fair trial, thereby requiring that the judgment rendered following a conviction by a jury be set aside." *State* v. *Newton,* 8 Conn. App. 528, 531, 513 A.2d 1261 (1986). Because there is a record adequate for us to review the merits of the defendant's claim, it will be afforded an *Evans* review. The right of an accused to testify on his own behalf derives from the fifth, sixth and fourteenth amendments to the United States constitution.[2] See *United States* v. *Bifield,* 702 F.2d 342, 347–50 (2d Cir.), cert. denied, 461 U.S. 931, 103 S. Ct. 2095, 77 L. Ed. 2d 304 (1983); see also *Nix* v. *Whiteside,* 475 U.S. 157, 164, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986) (habeas corpus). The right of an accused "to be heard by himself and by counsel" is also expressly guaranteed by article first, § 8, of the Con-

[2] The United States Supreme Court has recognized the accused's right to testify as "essential to due process of law in a fair adversary process." *Faretta* v. *California,* 422 U.S. 806, 819 n.15, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

necticut constitution.[3] In recognizing the existence of this fundamental right, however, we also recognize that "[a] defendant's right to present a full defense, including the right to testify on his own behalf, is not without limits. In responding to the charges against him, an accused must comply with the established rules of procedure and evidence, as must the prosecution, in order to insure a fair trial. See *United States* v. *Corr,* 543 F.2d 1042, 1051 (2d Cir. 1976). A criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible. See id. at 1051–52 (duplicative evidence may be excluded in court's discretion) . . . see also *Hughes* v. *Matthews,* 576 F.2d 1250, 1258 (7th Cir.) ('the right of a defendant to present relevant and competent evidence is not absolute and may "bow to accommodate other legitimate interests in the criminal trial process" '), cert. denied, 439 U.S. 801, 99 S. Ct. 43, 58 L. Ed. 2d 94 (1978)." (Citation omitted.) *United States* v. *Bifield,* supra, 350 (upholding trial court's ruling that the defense of duress or necessity failed as a matter of law and could not be presented to the jury).[4]

---

[3] Although the defendant on appeal alleges a violation of the constitutions of the United States and of Connecticut, he fails to advance any argument to distinguish between his federal and state rights. Under the circumstances of this case, therefore, we deem these respective rights to be coextensive. See *State* v. *Alexander,* 197 Conn. 180, 183 n.1, 496 A.2d 486 (1985).

[4] Counsel for the defendant on this appeal also represented the defendant in *United States* v. *Bifield,* 702 F.2d 342 (2d Cir. 1983), where he raised a similar issue on appeal, namely, whether the effect of the trial court's ruling rejecting as a matter of law the appellant's defense of duress and necessity to the charge of escape denied him his constitutional and statutory right to testify on his own behalf before the jury which tried him. Since the holding in *Bifield* of the United States Court of Appeals, Second Circuit, in the territorial jurisdiction of which we are located, was adverse to the claim advanced in that case, and now made to us on this appeal, we note with professional concern the failure of the same counsel in both appeals to cite that precedent of great weight to the issue under consideration by us either in his brief or in oral argument.

A careful analysis of the defendant's claim in the trial record reveals no deprivation of his fundamental constitutional rights. The trial court's contested ruling was well within the established rules of procedure and evidence for a criminal prosecution, and in no way violated the defendant's right to testify on his own behalf.

While the parameters of a defendant's right to testify are undefined; see 3 W. LaFave & J. Israel, Criminal Procedure § 23.3 (g); we need not determine whether such right guarantees the admission of evidence despite the defendant's failure to assert proper evidentiary grounds at trial. Moreover, we need not consider whether, by such failure, the defendant has waived such a right. In the present case, we fail to see how the defendant's testimony could have evidenced bias in the complainant when all that the defendant could state was that the victim had once said to him that she may have been raped, but she was not sure. Such an inconclusive and unassertive statement can hardly be probative of a bias on the part of the complainant for later charging the defendant with sexual assault in the first degree, in violation of § 53a-70 (a) of the General Statutes.

## II

The defendant's second claim is that the trial court erred by permitting the state to offer evidence of the

---

In this connection, we quote Ethical Consideration 7-23 of our Code of Professional Responsibility: "The complexity of law often makes it difficult for a tribunal to be fully informed unless the pertinent law is presented by the lawyers in the cause. A tribunal that is fully informed on the applicable law is better able to make a fair and accurate determination of the matter before it. The adversary system contemplates that each lawyer will present and argue the existing law in the light most favorable to his client. *Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of his client, he should inform the tribunal of its existence unless his adversary has done so; but, having made such disclosure, he may challenge its soundness in whole or in part.*" (Emphasis added.)

defendant's assertion of his right to an attorney and his right to remain silent as evidence of the defendant's guilt.

The defendant cites three instances during the trial where the prosecution's examinations of witnesses made reference to the defendant's invocation of his right to remain silent and his right to counsel in terminating his statement to the police. The defendant concedes that he completely failed to make an objection to the testimonial references to the defendant's assertion of his constitutional right to terminate his police questioning. The defendant's second claim, therefore, may only be reviewed if it falls within the "exceptional circumstances" defined in State v. Evans, supra.

Again, we agree with the defendant that he has raised an issue of a fundamental constitutional right and that there is a record adequate for an Evans review. See State v. Casey, 201 Conn. 174, 182, 513 A.2d 1183 (1986). The defendant claims that the prosecutor's questions and witnesses' responses[5] to them relating to the defendant's termination of his voluntary statement to the police served to deny the defendant his right to the

---

[5] The defendant has challenged the prosecutor's direct and rebuttal examination of Lieutenant William Graham, and his cross-examination of the defendant. A review of Graham's direct testimony reveals that Graham merely recounted the circumstances under which the defendant was booked at the police station, was advised of his constitutional rights, and orally waived those rights. A conversation then ensued between the officer and the defendant, culminating in the defendant's refusal to answer any more questions and his assertion of his right to counsel.

As to the state's cross-examination of the defendant, the transcript reveals that the defendant admitted being interviewed on other occasions by police. He claims to have asserted his right to counsel throughout the whole conversation with Graham. He also acknowledged that he was provided with food during the conversation, and that there were other policemen present during questioning.

As to Graham's rebuttal testimony, the record demonstrates that Graham again testified as to the duration of the questioning and that he stopped the interview as soon as the defendant requested an attorney, although there were more questions which the officer wanted to ask.

assistance of counsel, his right to be free from self-incrimination and his right to a fair trial, as guaranteed by both the federal and state constitutions.[6]

A prosecutor's reference to a defendant's assertion of his right to remain silent is not always constitutionally impermissible. *State* v. *Casey,* supra, 183. Such evidence may be " 'presented by the state to show the investigative effort made by the police and the sequence of events as they unfolded (an acceptable purpose under *State* v. *Ralls,* [167 Conn. 408, 427–29, 356 A.2d 147 (1974)]).' *State* v. *Moye,* [177 Conn. 487, 496, 418 A.2d 870, vacated and remanded on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129, on remand, 179 Conn. 761, 409 A.2d 149 (1979)]." *State* v. *Casey,* supra.

The witnesses' remarks elicited by the prosecution were merely factual accounts and narratives of the police interrogation of the defendant wherein and until the defendant asserted his right to remain silent and his right to counsel. There is no indication on the record that the prosecutor made any remarks which could reasonably be perceived as prejudicial to the defendant's rights. Likewise, there is no evidence in the record to support the defendant's claim that the evidence of his assertion of his rights was offered to demonstrate his guilt. Cf. *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

We also note that the defense counsel questioned the defendant on direct examination about his assertion of the right to remain silent and the right to an attorney. This questioning indicates that the defendant's failure to object was not due to inadvertence, inattention or mistake, but was a tactical decision at trial. Any con-

---

[6] Again, as in the first issue, the defendant has failed to claim a distinction between his federal and state constitutional rights. Consequently, we shall treat them as coextensive. See footnote 3, supra.

stitutional objection to its admission, therefore, has been waived. See *State* v. *Moye,* supra, 499.

There is no error.

In this opinion the other judges concurred.