## STATE OF CONNECTICUT *v.* MARTIN WARREN
## (4450)

DALY, BIELUCH and NORCOTT, Js.

Argued November 18, 1987—decision released June 14, 1988

*Richard Emanuel,* with whom, on the brief, was *Burton M. Weinstein,* for the appellant (defendant).

*Daniel C. Casagrande,* special assistant state's attorney, with whom was *Bradford J. Ward,* assistant state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) and conspiracy to commit sexual assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-70 (a). The defendant claims (1) that the trial court erred in instructing the jury on the elements of the crime of sexual assault in the first degree, (2) that the rape victims shield law, General Statutes § 54-86f, is unconstitutional because it violates the separation of powers provision of the Connecticut constitution, (3) that the rape victims shield law is unconstitutional as applied to this case, (4) that the trial court erred in limiting his cross-examination of the complainant regarding a prior rape complaint, (5) that the trial court erred in denying the defendant's motion to admit evidence of the complainant's prior sexual conduct, (6) that the trial court erred in instructing the jury on evidentiary exhibits, (7) that the trial court erred in its instructions on circumstantial evidence, and (8) that the evidence was insufficient to establish his guilt beyond a reasonable doubt of the crimes charged. We find no reversible error.

The jury could reasonably have found the following facts. On June 1, 1984, the complainant left her home at approximately 10:30 p.m. and went to Gig's, a nightclub and bar in Torrington. The complainant left Gig's at 1 a.m. on June 2, 1984. Sometime between the hours of 1 and 1:30 a.m., the complainant arrived at a bar in Waterbury called Toad's Place where she sat alone and had one or two beers. While at Toad's Place, the complainant was approached by a man she had met approximately one year earlier at a company outing. After a brief conversation, the complainant accompanied the man and one of his friends to a place in Naugatuck known as the Naugatuck Social Club.

The three arrived at the Naugatuck Social Club (NSC), a boarded-up, two room clubhouse where members and their guests shot pool and drank beer, at approximately 3 a.m. When the complainant walked in, she noticed that there were approximately twenty-five people in the clubhouse and that all but one or two were men. The defendant, who was then and had been the president or chairman of the NSC since its inception in 1983, was present when the complainant entered the clubhouse.

The complainant walked into the front room of the NSC. When she did, the men crowded around her. One of the men handed her a beer. She took a sip and the beer was taken away from her. Some of the men then began grabbing the complainant and pinching her. The complainant climbed up on top of the bar and tried to push the men away. The men continued to grab her, and she began clawing anyone who tried to touch her.

The complainant grabbed her pocketbook and tried to leave, but a man the complainant later identified as the defendant blocked the door. While the other men crowded around her, the defendant said, "I'll be the doorman." The defendant then said he wanted to play pool. He kicked the complainant and threw her onto the pool table. The complainant rolled off the table and someone handed her a pool stick. The defendant then proceeded to take a shot on the pool table. After the complainant had taken a shot, someone took the pool stick away from her. Some of the men grabbed the complainant and carried her to the back room, threw her down on a couch and proceeded to gang rape her. One of the men who participated in the gang rape was the defendant.

I

The defendant's first claim is that the trial court erred in instructing the jury on the elements of the crime of

sexual assault in the first degree. Specifically, the defendant takes issue with the court's statement that the "first element of [the crime of sexual assault in the first degree] . . . requires proof . . . that there was sexual intercourse with the complainant's body. . . . If you find that such intercourse took place, *whether by the defendant or someone else,* then the requirement of the first element is met." (Emphasis added.) It is the defendant's contention that this instruction enlarged the crime of sexual assault beyond the terms of the statute, thereby depriving him of his right to notice of the charges against him and his right to due process law. We find no error.

At the outset, we note that the defendant did not properly preserve this issue for appeal. The defendant neither filed a specific request to charge on this issue nor did he take an exception to the charge given. Practice Book § 854. Despite the defendant's failure to preserve this claim properly, we will review it for the first time on appeal because it implicates the defendant's fundamental constitutional right to a fair trial. *State* v. *Brown,* 199 Conn. 14, 26, 505 A.2d 690 (1986); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

The due process clause of the fourteenth amendment to the United States constitution requires that every fact necessary to constitute the crime of which the accused stands charged must be proven beyond a reasonable doubt before the accused may be convicted. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In order to ensure that every fact is proven beyond a reasonable doubt, "[i]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged." *State* v. *Williamson,* 206 Conn. 685, 708, 539 A.2d 561 (1988). " ' " ' "If justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly

with respect to the essential elements of the alleged crime." *United States* v. *Clark,* 475 F.2d 240, 248 (2d Cir. [1973])'. . . . " *State* v. *Kurvin,* [186 Conn. 555, 561, 442 A.2d 1327 (1982)].' *State* v. *Roque,* 190 Conn. 143, 157, 460 A.2d 26 (1983); *State* v. *Griffin,* 175 Conn. 155, 163, 397 A.2d 89 (1978)." *State* v. *Williamson,* supra, 709.

In this case, the defendant claims that the court's instruction was inaccurate in that it allowed him to be convicted of sexual assault in the first degree as a principal even if he, himself, did not have sexual intercourse with the complainant.[1] Our Supreme Court has recognized that "an instruction containing a misstatement of the law is more likely to be prejudicial than an instruction that contains an omission or an incomplete statement of the law. *Henderson* v. *Kibbe,* 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977)." *State* v. *Preyer,* 198 Conn. 190, 198, 502 A.2d 858 (1985). We find, however, that the court's instruction is not a misstatement of the law.

General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person . . . ." It is axiomatic that the words in a statute are to be given their plain and ordinary meaning. *Carlson* v. *Kozlowski,* 172 Conn. 263, 266, 374 A.2d 207 (1977). By its very terms,

[1] The state contends that the trial court properly instructed the jury on the elements of accessorial liability. We disagree. In order to be considered adequate, an instruction on accessorial liability must inform the jury that the defendant can be found guilty only if (1) he intended to commit the underlying felony of sexual assault in the first degree, and (2) he intended to aid the principal. *State* v. *Fleming,* 198 Conn. 255, 271, 502 A.2d 886 (1986), cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342; General Statutes § 53a-8. The trial court's mere statement that the defendant could be convicted even if he did not engage in intercourse did not properly instruct the jury on these elements of the crime.

this statute imposes liability for sexual assault on any person who compels another person, by the use of force, to engage in sexual intercourse, regardless of with whom the sexual act is performed. That the statute is to be given this construction is clear from its legislative history. "In construing a statute, [the] court will consider its plain language, its legislative history, its purpose and the circumstances surrounding its enactment." *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985).

Prior to 1975, the act of forcibly compelling someone to engage in sexual intercourse was considered rape in the first degree as proscribed by General Statutes (Rev. to 1975) § 53a-72. *State* v. *Rodgers,* 198 Conn. 53, 60–61, 502 A.2d 360 (1985). General Statutes (Rev. to 1975) § 53a-72 provided: "A male is guilty of rape in the first degree when *he* engages in sexual intercourse with a female: (1) By forcible compulsion . . . ." (Emphasis added.) It is clear under the terms of that statute that, in order to be guilty of rape in the first degree, a male had to personally engage in sexual intercourse with a female victim.

In 1975, however, General Statutes § 53a-72 was repealed and its provisions divided between sexual assault in the first degree, General Statutes § 53a-70, and sexual assault in the second degree, General Statutes § 53a-71. *State* v. *Rodgers,* supra, 60–61. In enacting this change, the legislature eliminated the requirement that the defendant must engage in a sexual act with the victim. " '[W]e may not presume that the legislature has enacted futile or meaningless legislation or that a change in the law was made without a reason.' *City Council* v. *Hall,* 180 Conn. 243, 251, 429 A.2d 481 (1980). 'We can assume that this change in the law was made to accomplish some purpose.' *Brown* v. *Cato,* 147 Conn. 418, 162 A.2d 175 (1960)." *State* v. *Mackor,* 11 Conn. App. 316, 322, 527 A.2d 710 (1987).

"The difference between the language used in the former and the present statutes evinces a legislative intent to overcome the construction given the earlier statute by previous cases in this jurisdiction." Id. The elimination of the requirement that the defendant personally engage in sexual intercourse with the victim shows unmistakably that the legislature intended to extend liability under the sexual assault statute to those who compelled another to engage in sexual intercourse but did not engage in intercourse themselves.[2] Because we hold that a person may be convicted of the crime of sexual assault in the first degree as a principal even if he, himself, does not engage in intercourse, we find that neither the defendant's due process rights nor his right to be apprised of the crimes with which he was charged were infringed.

## II

The defendant's next four claims of error relate to the trial court's refusal to permit the introduction of (1) certain evidence regarding a prior sexual assault claim made by the complainant, and (2) evidence that the complainant had, on prior occasions, simulated oral sex with a beer bottle. The defendant claims that the evidence proffered was relevant and admissible and that the trial court's refusal to allow its admittance denied him his constitutional right to confront witnesses, his right to present a defense, and his right to due process of law. U.S. Const., amends. VI and XIV; Conn. Const., art. I, § 8. The defendant further contends that the rape victims shield law, General Stat-

[2] The case of State v. Gianotti, 7 Conn. App. 701, 510 A.2d 451, cert. denied, 201 Conn. 804, 513 A.2d 700 (1986), is not to the contrary. In Gianotti, we were concerned merely with whether the court's instruction was adequate as a charge on aiding and abetting. We were not presented with the question of whether one may be convicted as a principal of sexual assault in the first degree even if one did not personally engage in the act of sexual intercourse.

utes § 54-86f, is violative of the separation of powers provision of the state constitution. Conn. Const., art. II; see also Conn. Const., art. V, § 1.

The following facts are pertinent to these claims of error. On direct examination, the complainant testified that after she had been thrown down on the couch, the defendant came and sat on her chest. As the defendant sat on her chest, other men began inserting things into her vagina. The complainant testified that she believed that one of the objects inserted into her vagina was a beer bottle.

On cross-examination, the complainant was asked how she could identify the object that was inserted into her vagina. The complainant testified that it "just felt like a beer bottle." The complainant was then asked if she had ever had an experience like that before. She replied that she had not. On cross-examination, defense counsel also sought to inquire of the complainant whether she had ever before claimed to have been sexually assaulted. The state objected and the court sustained the objection.

At the close of the state's case, the trial court reconsidered its earlier ruling and allowed the defendant to cross-examine the complainant about the prior claim of sexual assault. In making this ruling, however, the trial court limited the cross-examination to questions relevant to credibility and indicated that it would not permit any detailed examination into the collateral facts involved in that line of questioning.

On cross-examination, the complainant testified that approximately two years earlier, she had told several people that she had been raped. She further testified that she could not identify her attacker because she had been unconscious at the time and had only found out about the incident because someone had told her about it. Defense counsel then inquired as to who told the

complainant she had been raped. The state objected and the objection was sustained. Defense counsel also sought to inquire as to why the complainant was unconscious, but an objection to that line of questioning was sustained.

The defense then proceeded to put on its case. After the presentation of four witnesses, but before resting, the defendant made a motion to introduce evidence regarding (1) the complainant's simulated oral sex with a beer bottle, and (2) the complainant's prior rape complaint. The defendant claimed that this evidence was relevant to the issue of the complainant's credibility. The court denied the defendant's motion.

With regard to the proffered evidence regarding the complainant's simulated oral sex on a beer bottle, the trial court found that the evidence was too remote to bear on the complainant's credibility. The trial court's finding that the evidence was too remote was clearly a finding that the evidence was irrelevant. *State* v. *Hoeplinger,* 9 Conn. App. 147, 155, 517 A.2d 632 (1986), rev'd on other grounds, 206 Conn. 278, 537 A.2d 1010 (1988). "The rules governing the determination of relevancy are well established. '[E]vidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case.' *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985); *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985)." *State* v. *Franko,* 199 Conn. 481, 485–86, 508 A.2d 22 (1986). A trial court has broad discretion to determine the relevancy of proffered evidence. *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975).

In this case, the trial court clearly did not abuse its discretion in holding that the proffered evidence was irrelevant. The fact that the complainant may have, at one time, had a beer bottle in her mouth does not tend to show that she has ever had a beer bottle in her

vagina, nor does it tend to show that the complainant was untruthful when she said that she had never had an experience like that before. We find that this evidence was properly excluded from the jury's consideration.

With regard to the evidence concerning the complainant's prior rape complaint, the defendant first contends that the trial court impermissibly restricted his cross-examination of the complainant.

The defendant's right to cross-examine the witnesses against him is guaranteed by the sixth amendment to the United States constitution and by article first, § 8, of the Connecticut constitution. "The right of the defendant to confront and cross-examine the witnesses against him [however] is not absolute; *Chambers* v. *Mississippi,* [410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)]; *State* v. *Franko,* supra, 488; 'but may bow to "other legitimate interests in the criminal trial process." *Chambers* v. *Mississippi,* supra, 295; *State* v. *Vitale,* 197 Conn. 396, 401, 497 A.2d 956 (1985); *State* v. *Mastropetre,* 175 Conn. 512, 521, 400 A.2d 276 (1978).' . . . *State* v. *Franko,* supra, 488." *State* v. *Daniels,* 8 Conn. App. 190, 193, 512 A.2d 936 (1986). "The general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial court, but this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment." *State* v. *Cox,* 7 Conn. App. 377, 384, 509 A.2d 36 (1986). A trial court may limit the cross-examination of a witness so as to prohibit the intrusion into collateral matters. *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980); *State* v. *Cox,* supra, 384.

While it would have been a denial of the defendant's right of confrontation to refuse any cross-examination on the prior rape complaint; see *State* v. *Ouellette,* 190

Conn. 84, 102–103, 459 A.2d 1005 (1983); the trial court did not so limit the cross-examination of the complainant in this case. Defense counsel was given an opportunity to cross-examine the complainant about her prior complaint and, in the process, was permitted to develop facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the complainant, thus satisfying the constitutional standard. *State* v. *Gaynor,* supra; *State* v. *Cox,* supra; see also *State* v. *Heinz,* 3 Conn. App. 80, 86, 485 A.2d 1321 (1984). "Once it is established that the trial court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply '[e]very reasonable presumption . . . in favor of the correctness of the trial court's ruling in determining whether there has been an abuse of discretion.' *State* v. *Briggs,* 179 Conn. 328, 333, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)." *State* v. *Castro,* 196 Conn. 421, 426, 493 A.2d 223 (1985). " ' "To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." *United States* v. *Elliott,* 571 F.2d 880, 909 (5th Cir. 1978); *Gordon* v. *United States,* 438 F.2d 858, 865 (5th Cir. 1971).' *State* v. *Gaynor,* supra, 510." *State* v. *Castro,* supra, 426.

In this case, we cannot say that the trial court abused its discretion in limiting the scope of the complainant's cross-examination. As we noted above, the trial court allowed the defendant to cross-examine the complainant about this matter so as to put the issue of her reliability before the jury. The two additional questions the defendant sought to ask were clearly collateral, and the defendant has failed to demonstrate that he was prejudiced by their exclusion.

The defendant also claims that he should have been allowed to produce extensive evidence that the com-

plainant was not unconscious at the time the prior rape had occurred. In proffering this evidence, the defendant was attempting to impeach the complainant by contradictory testimony.

"The testimony of any witness may be contradicted by the testimony of any other witness." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 7.24.1. Extrinsic evidence, however, is not admissible to impeach the credibility of a witness on a collateral issue. *State* v. *Carbone,* 172 Conn. 242, 262, 374 A.2d 215, cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977); *State* v. *Rogers,* 9 Conn. App. 208, 212, 518 A.2d 399 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1288 (1987). In this case, the trial court was correct in ruling that the proffered evidence was inadmissible to impeach the complainant's credibility. The proffered evidence was clearly collateral to the present case. See *State* v. *Rogers,* supra.

Because we have found that the evidence proffered by the defendant was properly excluded as irrelevant and collateral, we need not address the defendant's challenge to the constitutionality of the rape victims shield law. " 'We have held on numerous occasions that the court will not pass upon a constitutional question if there is present some other ground upon which the case may be decided.' *Hartford* v. *Powers,* 183 Conn. 76, 84–85, 438 A.2d 824 (1981) and cases cited therein, including *State* v. *Gold,* 180 Conn. 619, 639–40, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980)." *State* v. *Williams,* 200 Conn. 310, 322, 511 A.2d 1000 (1986); see also *State* v. *Franko,* supra, 485.

## III

The defendant next claims that the trial court erred in its instructions to the jury on the use of evidentiary

exhibits. The defendant concedes that no exception was taken to this charge at the trial level but asserts that this claim is reviewable under the doctrine of *State* v. *Evans,* supra. We find that this claim implicates the defendant's fundamental constitutional right to a fair trial, and hence, we will review this claim for the first time on appeal. Id.

It is axiomatic that "it is the trial court judge, and not the jury, who determines the admissibility of evidence." *State* v. *Randolph,* 190 Conn. 576, 587, 462 A.2d 1011 (1983); see also Fed. R. Evid. Rule 104 (a) ("[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court"). This rule is based on the long established principle that it is the province of the trial court to determine questions of law while it is the province of the jury to determine only questions of fact. *State* v. *Tomassi,* 137 Conn. 113, 123, 75 A.2d 67 (1950). By removing the question of the admissibility of evidence from the jury, this rule ensures that the jury will only consider that evidence that is properly before it and also, that the jury will not disregard evidence it is bound to consider.

In this case, it is clear that the trial court made an initial determination of the admissibility of all the exhibits entered at trial. After the presentation of all of the evidence, however, the trial court instructed the jury that "You must decide, under the same test of reasonable probability, whether the identification nature of the item is sufficient to warrant its reception in evidence." The defendant claims that this instruction was error because it required the jury to make an independent determination as to the admissibility of the physical evidence.

Several courts have had the opportunity to consider charges, such as the one given in this case, which allow the jury to determine the admissibility of evidence even after the court had deemed it to be admissible. In *United States* v. *Dennis,* 183 F.2d 201, 230–32 (2d Cir. 1950), aff'd, 341 U.S. 494, 71 S. Ct. 857, 95 L. Ed. 1137 (1951), Judge Hand reviewed such a charge dealing with the admissibility of a coconspirator's statement. Judge Hand noted that "the better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends, and that, if he decides it to be competent, he is to leave it to the jury to use like any other evidence, without instructing them to consider it as proof only after they too have decided a preliminary issue which alone makes it competent. Indeed, it is a practical impossibility for laymen, and for that matter most judges, to keep their minds in the isolated compartments that this requires." Id., 231. Almost all of the courts who have recently addressed this issue have reached the same conclusion. See, e.g., *United States* v. *Federico,* 658 F.2d 1337, 1342 (9th Cir. 1981); *United States* v. *Jackson,* 627 F.2d 1198, 1217–18 (D.C. Cir. 1980); *United States* v. *Bey,* 437 F.2d 188, 190–92 (3d Cir. 1971). We agree with the rationale expressed in those decisions. " 'When the judge decides admissibility, the jurors should not be told anything about the issue. Giving them a "second bite at the apple" serves only to confuse, and achieves no useful purpose . . . .' " *United States* v. *Mastropieri,* 685 F.2d 776, 789 (2d Cir.) cert. denied sub nom. *Pate* v. *United States,* 459 U.S. 945, 103 S. Ct. 260, 74 L. Ed. 2d 203 (1982), quoting 1 Weinstein, Evidence § 104.[05] at 104-44.9.

Under this standard, the trial court's instruction was clearly erroneous. We must now determine, however, whether the court's instruction was harmless beyond

a reasonable doubt. *State* v. *Coleman,* 14 Conn. App. 657, 678–83, 544 A.2d 194 (1988). We find that it was.

The defendant contends that the error was not harmless because it allowed the jury to refuse to consider a jacket that had been entered into evidence which the defendant purported to have worn on the night of the incident at the NSC. The thrust of the defense in this case was that the defendant was present at the NSC when the complainant was assaulted but that the complainant misidentified him as the man who led the assault. The complainant had testified that the man who led the attack was wearing a specific type of jacket, and the defendant produced evidence that he was wearing another type of jacket. The defendant entered into evidence the jacket he claims to have been wearing that night.

We begin by noting that there were no questions raised at trial concerning the authenticity of the jacket the defendant entered into evidence. No objection was made to its admission into evidence. It is hard to believe that when no objection was made to its admission, the jury could conclude that the "identification nature of the item [was not sufficient] to warrant its reception into evidence." We further note that the question in this case was not whether the jacket the defendant claimed to have worn existed. The question was whether he was wearing that jacket on the night in question, and whether the complainant misidentified him. The defendant had several witnesses who testified as to what he was wearing on the night in question, and the jury was bound to consider that evidence. Given these facts and the fact that the instruction worked to the defendant's benefit for the exhibits entered by the state, we find this instructional error to be harmless beyond a reasonable doubt.

## IV

The defendant next claims that the court erred in its instructions to the jury on circumstantial evidence.[3] The defendant claims that the court's instructions unconstitutionally diluted the state's burden of proving guilt beyond a reasonable doubt.

In the past, our courts have found no error in the giving of an instruction which requires that all inferences drawn must be reasonable. *State* v. *Silano,* 204 Conn. 769, 772–75, 529 A.2d 1283 (1987); *State* v. *Wright,* 9 Conn. App. 275, 280–83, 518 A.2d 658 (1986), cert. denied, 203 Conn. 802, 522 A.2d 293 (1987). This charge compares favorably with those earlier instructions. Even if we were to find error in this case, we note that the primary disputed issue at trial was the identity of the defendant. We have often held that where the principal disputed factual issue at trial is identity, which is not classically dependent upon circumstantial evidence for its proof, the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous instruction regarding the use of circumstantial evidence. *State* v. *Peay,* 13 Conn. App. 578, 582, 538 A.2d 708 (1988); *State* v. *Biggs,* 13 Conn. App. 12, 21, 534 A.2d 1217 (1987); *State* v. *Perez,* 10 Conn. App. 279,

---

[3] The court instructed the jury as follows: "What a person's purpose or intention has been is necessarily very largely a matter of inference. A person may take the stand and testify directly as to what his or her purpose or intention was and that testimony you can believe or not, according to whether or not it warrants belief. But, no witness can be expected to come here and testify that he looked into another person's mind and saw therein a certain purpose or intention. The only way in which you, the jury, can determine what a person's purpose or intention was in any given time, aside from that person's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and from those you may infer what his purpose or intention was. This is not a mandatory inference, but it is one which you may draw, if you find it is reasonable to do so."

283–84, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987). Reading the instructions as a whole, we find that it is not reasonably possible that the jury was misled. *State* v. *Biggs,* supra, 22–23.

## V

The defendant's final claim is that the evidence was insufficient to support either his conviction for sexual assault in the first degree or his conviction for conspiracy to commit sexual assault in the first degree. "The standard that applies when a jury verdict is challenged for insufficiency of the evidence is well settled. The issue is whether the jury could reasonably have concluded, upon the facts established and inferences reasonably drawn therefrom, that the defendant was guilty beyond a reasonable doubt. *State* v. *Baskins,* 12 Conn. App. 313, 316, 530 A.2d 663 (1987). 'The evidence must be given a construction most favorable to sustaining the jury's verdict.' *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985); see *State* v. *Monk,* 198 Conn. 430, 432, 503 A.2d 591 (1986). Every element of the crime charged must be proved, and although it is in the province of the jury to draw logical inferences from the facts proven, they may not resort to speculation." *State* v. *Robinson,* 14 Conn. App. 40, 42, 539 A.2d 606 (1988).

Construing the evidence in a light most favorable to sustaining the jury's verdict, we find the evidence sufficient to support the defendant's conviction on both counts.

There is no error.

In this opinion the other judges concurred.